STATE of Missouri ex rel., Kirk BRANUM and Joy Branum, Respondents,

v.

**BOARD OF ZONING ADJUSTMENT OF THE CITY OF KANSAS CITY, MISSOURI, et al., Appellant.**

**No. WD 60717.**

Missouri Court of Appeals, Western District.

Submitted May 1, 2002.

Decided July 2, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 2002.

Application for Transfer Denied Oct. 22, 2002.

---

Patricia Renee Jensen, Kansas City, for Appellant.

John W. Roe, Kansas City, for Respondents.

Before PATRICIA BRECKENRIDGE, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

PER CURIAM:

The Board of Zoning Adjustment of Kansas City, Missouri ("Board") appeals the circuit court's judgment reversing the Board's denial of two non-use variances for an existing detached garage on property owned by Respondents Kirk and Joy Branum. The decision of the Board is affirmed.

## Factual Background

In 1995, the Branums obtained a permit from the Department of Codes Administration ("DCA") to build a 21–× 23–foot garage and apparently poured the footings and had them inspected and approved that same year. At some point, construction on the garage stopped, and on April 12, 1999, Mrs. Branum went to the DCA and obtained a new permit, because the original one had expired. The DCA says the 1999 permit was merely a renewal of the 1995 permit.

Joy Branum stated that she also obtained approval to build a larger garage. DCA employee Cliff McQuillen testified that Mrs. Branum asked about expanding the garage, but that he did not approve that request. The 1999 permit does indicate that Mrs. Branum or someone drew a dotted line suggesting a larger garage. However, the permit contains no reference to any dimensions other than the original 21–× 23–feet. The 1999 permit states in the comments section:

> "construct 21' × 23' detached garage per approved site plan—no plan required—work started under 95–18465 [the 1995 permit number]."

Mrs. Branum testified that she believed she had received authorization to expand the size of the garage to 24–× 33–feet. The Branums undertook construction of the larger garage. The site was inspected on two occasions after they decided to increase the size. In April 1999, an inspector inspected the slab construction in behalf of the city. The other inspection was for electrical and plumbing compliance. The evidence does not state when the original footings were expanded to the larger size. The expanded garage was eighty-five percent complete in November, 1999, when the Branums received a notice of violation from the DCA, stating that the garage was not in conformance with city codes.

The notice of violation cited two problems with the garage. First, there was a problem with the side-yard setback to the south, i.e., the garage did not meet the two-foot side-yard setback requirement in that the south wall was only twelve inches from the south property line and the roof overhang actually extended across the south property line. Second, the garage exceeded the rear lot coverage limitation by eighty-three square feet, i.e., the code specifies that the structure may not exceed forty percent of the total size of the rear lot. The maximum square footage allowed under the forty percent limitation would be 709 square feet, and the garage as built measures 792 square feet.

The Branums then requested non-use variances from the Board. After three separate hearings on the matter, the Board ultimately denied the Branums' requests for the variances for the garage. The Branums sought review by certiorari in the circuit court. The circuit court reversed the Board's denial of the variances. The circuit court did not specify the grounds on which it was reversing the Board decision. The Board appeals.

## Standard of Review

 Review is of the findings and conclusions of the Board and not the judgment of the trial court. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas*

*City,* 24 S.W.3d 681, 684 (Mo. banc 2000). The determination of whether a "practical difficulty" warrants an area (or non-use) variance in a particular case is a matter for the discretion of the Board, which will be reversed only for an abuse of discretion. *Hutchens,* 848 S.W.2d at 619.[1]

The Branums' single point on appeal is that there was a lack of substantial evidence in the record supporting the Board's denial of the non-use variances for the Branums' already constructed garage. Because this does not exactly apply the correct standard of review, we will interpret their point as asserting that the Board abused its discretion in denying the variances.

 The burden was on the Branums to demonstrate to the Board that the variance requests should be granted. See *Behrens v. Ebenrech,* 784 S.W.2d 827, 829 (Mo.App.1990); *Ogawa v. City of Des Peres,* 745 S.W.2d 238, 242 (Mo.App.1987). Kansas City Ordinance § 80–300 states that the Board "*may* issue an order varying or modifying a general rule or regulation where the board finds that the rule or regulation will, by reason of exceptional circumstances or surroundings, constitute a practical difficulty or unnecessary hardship . . . ." The ordinance does not require the Board to grant such a variance but gives it the discretion to do so. As already noted, the standard is abuse of discretion. *Hutchens,* 848 S.W.2d at 619. In exercising this discretion, the Board must bear in mind that the power of a board to grant variances from zoning requirements "should be exercised sparingly and in accordance with the public welfare." *Id.*

### The Board Hearings

At the Board hearings, three individual neighbors and one neighbor who was acting as the representative of the neighborhood association testified against granting the variances for the garage. The neighbors' primary concerns were with the size of the structure and its negative effect on the neighborhood and on property values, and concerns about the increased water runoff and soil erosion already affecting neighboring properties as a result of the oversized structure.

The Branums contend that the testimony of these neighbors provided no solid support for the denial of the variances by the Board. The very phrasing of this contention shows that the Branums fail to understand the standard of review. It is not for the Board to show that it had "solid support" for its decision. It is for the Branums to show that the evidence so clearly demonstrated the appropriateness of granting the variances that it was an abuse of discretion for the Board to deny the variances. In any event, the Branums note that the neighbors expressed concerns about the height of the garage, which is not a legal issue because the height is within code. The Branums also argue that complaints about the effect of the garage on water runoff and soil erosion amounted to mere speculation. The Branums also contend the neighbors' complaint that the garage is more a "carriage house" than a garage is irrelevant. At any rate, the Branums argue, the variance requests should have been granted because the variances applied for are not substantial, but are *de minimis,* in that the garage exceeds the maximum size by only eighty-

1. Some decisions of the Board are reviewed to determine whether the ruling is authorized by law and supported by competent and substantial evidence, based on the record as a whole, and whether it is arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. *See Hutchens,* 848 S.W.2d at 617. The denial of area variances on the basis of "practical difficulties," however, is reviewed for abuse of discretion. *Id.* at 619.

three square feet, and the side-yard setback variance request is only for twelve inches.

Kansas City Zoning Ordinance § 80–300 provides that "exceptional circumstances or surroundings" may constitute a "practical difficulty" warranting a variance, and Missouri statute § 89.090.1(3) states:

> In passing upon appeals, where there are *practical difficulties or unnecessary hardship* in the way of carrying out the strict letter of such ordinance, [the board shall have the power] to vary or modify the application of any of the regulations or provisions of such ordinance relating to the construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done . . . .

(emphasis added).

■ The "practical difficulties" standard of § 89.090 is applied in obtaining area or non-use variances, whereas the slightly more stringent standard of an "unnecessary hardship" is applied in obtaining use variances. *State ex rel. Klawuhn v. Bd. Of Zoning Adjustment*, 952 S.W.2d 725, 728–29 (Mo.App.1997) (*citing Matthew v. Smith*, 707 S.W.2d 411, 413 (Mo. banc 1986)). The rationale for distinguishing between the standards for obtaining area variances and use variances can be found in the difference between the two types of variances. *Id.* Whereas an area variance relaxes only one or more incidental limitations to a permitted use, a use variance actually alters the use or uses permitted by the ordinance. *Id.*

### "Practical Difficulties"

■ Although there is no precise definition of "practical difficulties," "[a]t the very least, a non-use [area] variance applicant must show that as a practical matter the property cannot be used for a permitted use *without* coming into conflict with certain of the ordinance's restrictions." *Slate v. Boone County Bd. Of Adjustment*, 810 S.W.2d 361, 364 (Mo.App.1991). That is not the case. The Branums simply chose to construct improvements which did not satisfy conditions of the zoning ordinance.

The Branums presented the testimony of three experts to show that the "practical difficulties" they face if required to change the garage to conform to the code far outweigh the harm to the neighborhood if the variances are granted and the garage is completed. The Branums' experts were: (1) an architect, who testified that there was no significant difference between the garage as built and as it would have been built by conforming to the code and that the garage was in conformance with the rest of the architecture of the neighborhood; (2) a real estate appraiser, who testified that the garage as built would actually increase property values in the neighborhood; and (3) a contractor, who testified that the garage is eighty-five percent complete and estimated that the cost to the Branums to change the garage to conform to the code would be either $27,500 or $50,000, depending upon whether the garage could be altered or needed to be essentially torn down and rebuilt. The Branums assert that through the presentation of this evidence they have met the burden of establishing the existence of a sufficient *practical difficulty* to warrant the granting of the variances. Once again, however, the fact that they presented the variances does not demonstrate that the refusal to grant the variances was an abuse of discretion.

■ The Board points out that the power of a board to grant variances from zoning requirements should be "exercised sparingly and in accordance with the public welfare" and "conditions personal to a

landowner are not relevant to whether a variance should be granted." *Hutchens,* 848 S.W.2d at 619. The variance can be granted only for reasons related to the property, not to personal hardships on the owners. See *State ex rel. Klawuhn v. Bd. of Zoning Adjustment of City of St. Joseph,* 952 S.W.2d 725, 729 (Mo.App.1997); *State ex rel. Holly Inv. Co. v. Bd. of Zoning Adjustment of Kansas City,* 771 S.W.2d 949, 951 (Mo.App.1989); *Ogawa,* 745 S.W.2d at 242–43.

As already noted, the term "practical difficulties" refers to conditions of the land in question, and not conditions personal to the owner of the land. *Id.* Some relevant factors to be considered in determining whether sufficient practical difficulties exist include: (1) how substantial the requested variance is; (2) whether the variance will result in a substantial change to the character of the neighborhood or create a substantial detriment to adjoining properties; (3) whether the violation can be cured by some method other than the granting of a variance; and (4) whether, in light of the manner in which the violation arose and considering all relevant factors, the interests of justice will be served by granting the variance. *Id.* Economic hardship is not the determinative factor in a finding of "practical difficulties," but may be a consideration. *Holly Inv.,* 771 S.W.2d at 952. For economic hardship to be a consideration, the record must show that the land in question cannot yield a reasonable return if the variance is not granted; that the hardship on the owner is due to unique circumstances and not to the general conditions in the neighborhood; and that the variance will not alter the essential character of the locality. *Id.* at 951–52.

Our review of the evidence indicates that the Branums did not demonstrate to the Board that the land cannot yield a reasonable return absent the granting of the variance. Nor did the Branums show that the hardship is due to any unique circumstances not common to the neighborhood. Whether the variance will alter the essential character of the neighborhood is a factual question about which conflicting testimony was presented by the respective sides. The determination as to the credibility of witnesses is strictly for the administrative tribunal, and "if the evidence supports either of two contrary conclusions, the administrative determination must prevail." *Columbia Tower,* 829 S.W.2d at 537.

### Width of Their Lot

The Branums argue that a practical difficulty exists in that the width of their lot is only 37.5 feet, and they contend that the majority of the other lots in the neighborhood are 50 feet. Based on the exhibits showing the plat of the neighborhood, however, it appears that other lots surrounding the Branums' property are in fact 37.5 feet or less. The Branums also cite the shape of the existing residence and the way it sits on the lot as a practical difficulty related to the property itself. Specifically, they state that a room addition on the back of the house so reduces the size of the back yard that it significantly decreases the size the garage may be.

We cannot say as a matter of law that the fact that the lot is only 37.5 feet wide as opposed to 50 feet wide is a sufficient reason related to the topography of the property to require the granting of the variances, in that the fact that the lot is only 37.5 feet wide is not peculiar to the property, as is required pursuant to *Behrens v. Ebenrech,* 784 S.W.2d 827 (Mo.App. 1990). "[T]he practical difficulty relied on as a ground for a variance must be 'unusual or peculiar to the property involved and must be different from that suffered throughout the zone or neighborhood.'" *Id.* at 828–829.

### Interests of Justice

■ The Branums also suggested in oral argument that the Board, in considering all the relevant factors, should have recognized that the interests of justice would be served by the granting of the variance. The Branums contend that Mrs. Branum took their request for the expanded size plan to the DCA office for a permit and left with the impression the expanded size plan had been approved. The Branums state that they were unaware at any point that the expanded plan was not approved, and that they relied upon inspectors' approvals of the work done subsequent to that. With regard to the side-yard setback problem to the south, the Branums note that the expansion in 1999 went to the north; that the footing was poured in 1995 and was originally approved as to the south side; and that the increase in the size of the structure had no effect on the side-yard setback problem. As to the forty percent rear lot coverage limitation, the Branums complain that they did not know the area beside the L-shape room addition in back could not be included in the rear yard size in order to calculate what percentage the garage was taking up.

The difficulty with the Branums' position is that we must assume that the Board did in fact consider all of the factors mentioned, and simply exercised its discretion in this case not to grant the variances. If the Board believed that the DCA never granted permission for the larger garage in the first place, there is little basis to accuse the Board of arbitrariness or abuse of discretion in denying the variances. The Board also was not required to relieve the Branums of their mistake in not understanding the side-yard-setback problem or the lot coverage limitation. *Wehrle v. Cassor,* 708 S.W.2d 788, 790 (Mo.App.1986). The Branums rely upon *Taylor v. Bd. of Zoning Adjust-ment of City of Blue Springs,* 738 S.W.2d 141 (Mo.App.1987), in support of their argument that the variance should be granted based upon a mistake by the city. *Taylor* is distinguishable. In *Taylor,* the city did actually mistakenly issue a permit that allowed a larger sign to be constructed than was permitted under the city's zoning ordinance. *Taylor,* 738 S.W.2d at 144. That is not the case here. Here, the permit stated that the size of the garage approved was 21–× 23–feet.

In *Wehrle v. Cassor,* the zoning board granted a variance based upon hardship resulting from a mistake, but not from a unique physical characteristic of the land. The proponents of the variance had offered no evidence that an irregular shape or topographic condition caused hardship or difficulty. The reviewing court reversed the zoning board, stating that the ordinance does not give the board unlimited discretion to grant variances. *Wehrle,* 708 S.W.2d at 790. The *Wehrle* court found that the board had exceeded its authority. *Id.* at 791.

■ The Branums' argument with regard to the inspections is similar to an estoppel type of argument. Estoppel does not apply to acts of government, including matters related to zoning. See *Long v. Bd. of Adjustment of City of Columbia,* 856 S.W.2d 390, 393 (Mo.App.1993); *Lichte v. Heidlage,* 536 S.W.2d 898, 901 (Mo.App. 1976). Moreover, in fairness to the Board, it should be noted that none of the inspectors were specifically responsible to measure the size of the garage. The inspectors were there to inspect the quality of the construction of the slab, the quality of the electrical wiring, and the plumbing.

The Branums' assertions that granting the requested variances would further the general purpose and intent of the city's zoning ordinance are based upon the testimony of their witnesses. There was conflicting evidence. It was for the Board to

decide what witnesses and testimony to believe. The Board made that determination in favor of the witnesses who testified against the granting of the variances. A purpose of the zoning ordinance was to balance the competing interests of the property owners. The Board elected to uphold the balancing provided in the ordinance. We cannot say as a matter of law that the Board could not make that determination. Under the facts of this case and under the applicable standard of review, we are without any legal basis to reverse the Board of Zoning Adjustment.

## Conclusion

For the foregoing reasons, we affirm the decision of the Board of Zoning Adjustment to deny the Branums' requests for variances.