**Robert M. BAUMER,**
Petitioner/Respondent,

v.

**CITY OF JENNINGS, Missouri, a Municipal Corporation, and Denise McDuffie, Bill Fortner, Dorothy Moore, and Shirley Barnes, as members of the Board of Zoning Adjustment of the City of Jennings, Missouri, Respondents/Appellants.**

No. ED 90038.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 11, 2008.

M. Jamis Kresyman, Lloyd E. Eaker, St. Louis, MO, for appellant.

Steven Koslovsky, Steve Koslovsky, LLC, St. Louis, MO, for respondent.

KURT S. ODENWALD, Judge.

### Introduction

The City of Jennings (City) and the members of the City's Board of Adjustment (Board), Denise McDuffie, Bill Fortner, Dorothy Moore, and Shirley Barnes, appeal the trial court's judgment, entered by order on June 7, 2007, reversing Board's denial of Robert M. Baumer's (Petitioner's) application for a variance. Board contends that the trial court erred in reversing its decision because the Board's decision was discretionary and could have been reasonably reached as supported by substantial evidence. We review the decision of Board on appeal. We reverse the judgment of the trial court, and the cause is remanded to the trial

court for the entry of judgment affirming Board's decision.

## Background

Petitioner owns and occupies the property at 8916 Jennings Station Road (Subject Property) in a residential neighborhood in Jennings, Missouri. Subject Property, a corner lot, is positioned at the intersection of Jennings Station Road and Wedgewood Avenue and is zoned R–1 Single Family Dwelling District. Petitioner's house and existing detached garage are located on Subject Property. According to Petitioner's drawings, the detached garage is 26 feet by 25 feet. The garage sits more than 26 feet from the east edge of the property, which touches Wedgewood Avenue, and approximately 65 feet from the south side of the property, which borders a neighboring property. Petitioner wishes to build a new garage, approximately 30 feet by 30 feet in size, and to position the garage in a new location on his property within approximately 15 feet of the east edge of the property and 30 feet from the south side of the property.

On July 21, 2005, Petitioner submitted to City his initial application for a building permit to build a new garage. City denied the permit due to a violation of City's setback requirement along Wedgewood Avenue. Jennings Zoning Ordinance, chapter 38, Section 4.8.1 provides that front yard setbacks must be a minimum of 30 feet from a building to the front property line, and where lots have double frontages, such as corner lots, front yard setbacks shall be provided on both streets. Where fifty percent or more of the frontage along a street have existing structures that are set back less than 30 feet from the building to the property line, the average frontage of those setbacks shall be used as the required setback. City of Jennings, Mo., Zoning Ordinance ch. 38, Section

4.8.1(a), (b). The amount of encroachment Petitioner originally requested is unclear from the record, but Petitioner's counsel stated during the Board's second hearing that the revised variance request of 10 feet was considerably less than the first: "Originally we asked for a considerably greater setback variance from the right of way on Wedgewood on the first go round."

Petitioner appealed the City's decision to Board, which denied Petitioner's appeal after a hearing on September 14, 2005. Petitioner filed his first writ of certiorari in St. Louis County Circuit Court for review of Board's decision, but because Board had failed to include City's zoning ordinance in the record before it, the case was remanded to Board for further proceedings. Thereafter, Petitioner filed his Appeal for Variance from Zoning on February 7, 2006.

On March 28, 2006, Board conducted a second hearing. During the hearing, Petitioner's counsel explained that Petitioner was requesting a 10–foot variance from the required 25–foot setback so that Petitioner could build his garage within 15 feet from the right-of-way on Wedgewood Avenue. Petitioner's counsel explained that the existence of a sanitary sewer line west of the existing garage prevented Petitioner from positioning the proposed garage further away from Wedgewood Avenue. Petitioner testified that the Metropolitan St. Louis Sewer District (MSD) maintained the sewer line, which was subject to its jurisdiction, but MSD did not have an easement for the sewer line on Subject Property.

Although there was evidence that Petitioner had conversations with MSD representatives about the location of his garage, the verification letter from MSD offered into evidence was written in general terms. The letter stated:

> MSD will not approve the construction of a structure in close proximity to an

existing pipe if such structure will impose an additional load on the sewer line. The only way such approval could be obtained is to prove, to MSD's satisfaction, that the additional load of the structure will be directed below the elevation of the sewer line. In other words, each such request would have to be considered on its own facts and engineering drawings.

Petitioner verified the location of the sewer line through the services of AA Quick Electric Sewer Service, a survey firm that determined the sewer line followed a straight line back toward the rear of the property. The firm merely located the sewer in the field, however, and Petitioner himself transferred the information into a drawing. Petitioner presented copy of the check he paid and a receipt from AA Quick to prove that the firm indeed performed the work.

City's Public Works Director Richard Perry (Public Works Director) testified that Board should not consider the sewer line to be a problem and that Petitioner's counselor was incorrect in his assertion that the garage could not be built upon the sewer line. Public Works Director testified that Petitioner could replace a portion of the sewer pipe with a stronger pipe and then build on top of the line. Public Works Director also questioned whether the sewer line in question was a public sewer, stating that MSD would have surveyed Subject Property and established exact locations of the sewer line and the easement were it a public sewer. Public Works Director said that in his 28 years' experience as a master drain layer and plumber for St. Louis County, he had never seen MSD accept maintenance of a private sewer line used by only one user, and had never seen a sewer line measuring only 6 inches in diameter, as was the case here.

When asked whether a Missouri Registered Land Surveyor performed a survey, Petitioner's counsel stated no, but pointed out that City's ordinance did not require a survey with this application. Board noted that it had asked Petitioner for a certified survey during its last meeting so that it could understand the construction plans and accurate measurements of the proposed garage and its location. Petitioner's counsel responded that Board had his and Petitioner's testimony, and that no contrary testimony was before Board.

During the hearing, in response to a Board member's comments about using the average setback of 25 feet, Petitioner's counsel stated, "But if you have 20 feet back you are still 5 feet within the setback according to your calculations. If you wanted to approve a 5 foot variance instead of a 10 foot variance I guess we can go back and see what we can do, but it's still a variance. I guess my question is if you are going to approve a 5 foot variance, is a 10 foot variance that much more excessive or that much more of a problem."

Later, a Board member questioned whether a hardship existed in moving the garage "the 5 feet that we talked about?" Petitioner's counsel answered, "Let me try and address that. If the Board sees fit to grant us instead of a 10 foot variance, what we are asking for, a 5 foot variance we would obviously be happy to have that. And we would be glad to see if we could make this garage fit within that 5 foot variance and also where the sewer line is, so we might be able to do the garage that is 5 feet off the sewer line as has been suggested.... It does reduce the amount of variance requested. If you are inclined to do that, obviously the plan now—we can go back to the drawing board perhaps we will be able to make it work. I don't know if that was a response to your question or not." When the City Attorney pointed out

the city ordinance requiring Board to grant the "minimum variance necessary" if an appeal for a variance is granted, one Board member stated that Board did not know what the minimum was.

Petitioner presented exhibits that included an aerial photograph of Subject Property and some of the surrounding properties; an aerial photograph showing the area near Subject Property along Jennings Station Road; a hand-drawn plan depicting Subject Property with the current and proposed garages; a copy of the assessor's plat from St. Louis County showing the Sunnydale subdivision, which includes Subject Property, neighboring properties and some improvements made on those properties; and a section of the assessor's plat with Petitioner's hand-marked locations of buildings and other setback violations in Subject Property's neighborhood. Petitioner also presented several photographs of neighboring structures that he believed violated setback requirements. Public Works Director testified that the exhibits could not be qualified because they were not taken from a fixed reference point on the ground, which could be legally established only by a registered land surveyor. Public Works Director stated that the measurements on Petitioner's drawing would be accurate only if there was a legitimately fixed reference point placed on the ground.

Petitioner's counsel discussed with Board the required setback for Wedgewood Avenue during the hearing. Petitioner submitted that City ordinance, Chapter 38 of the Municipal Code, City of Jennings Zoning Ordinance, Article 4, Section 4.8, required a 30–foot setback, but because of the 25–foot setback of "all the other homes on Wedgewood," the setback requirement is the average setback of those homes, 25 feet. Public Works Director also testified that he had deter-mined the average frontage on the property on Wedgewood Avenue was 25 feet. Board further questioned whether the "minimum variance necessary" for a new garage was 10 feet, or whether it was 1 foot, according to an accurate survey.

At the hearing's conclusion, Board again voted to deny Petitioner's appeal. Board entered its Findings of Fact and Conclusions of Law, which stated that Petitioner presented no evidence proving that MSD has a right-of-way over Petitioner's private sewer line. Additionally, Board's findings noted testimony stating that the private sewer pipe could be changed and built over or the pipe could be moved. Board also noted Public Works Director's testimony that Petitioner refused to provide a certified survey to supplement his hand drawing of the property, which lacked a fixed marker in the ground and was therefore unreliable. Board concluded that: (a) there was insufficient evidence of any practical difficulties or unnecessary hardships due to exceptional or unique circumstances or conditions such that strict application of the Zoning Ordinance would deprive the owner of the reasonable use of the property, and (b) even if there were a hardship, without a certified survey, Board had insufficient evidence to grant the minimum variance necessary.

Finally, Petitioner filed his second certiorari action in St. Louis County Circuit Court on April 24, 2006. On June 7, 2007, the circuit court entered its order reversing Board's decision and ordering Board to approve the requested variance. City appealed, and pursuant to Missouri Rule of Civil Procedure 84.05(e), Petitioner filed the opening and reply briefs.

### Point on Appeal

In his sole point on appeal, Petitioner claims that the Board of Adjustment's de-

nial of Petitioner's requested variance from the required setback of Wedgewood Avenue was arbitrary and capricious and not supported by substantial and competent evidence. Petitioner asserts that he presented substantial evidence of: (1) practical difficulty arising from the presence of a sewer line running through the middle of his rear yard; and (2) the absence of the requested variance's negative impact on surrounding properties because several similar setback violations already exist.

### Standard of Review

Appellate review of a trial court's decision on a board of adjustment decision requires the appellate court to independently review the original decision of the board of adjustment, not the trial court's decision. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000). During its review, the appellate court must determine whether the board's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction. *Id.* The court must view the evidence and reasonable inferences in the light most favorable to the board's decision. *Id.* Only where the board exceeds its authority should the reviewing court hold the board's ruling to be illegal and void. *Hutchens v. St. Louis County*, 848 S.W.2d 616, 617 (Mo.App. E.D.1993).

### Discussion

The setback ordinance at issue is contained in Chapter 38 of the Municipal Code, City of Jennings Zoning Ordinance, Article 4, Section 4.8, pertaining to "R–1 Single Family Dwelling District" regulations. Section 4.8 provides as follows:

**Setback Requirements.** The following are the setback requirements for a primary building located in an R–1 District, and the modifications to those requirements when certain conditions exist.

**4.8.1 Front Yard Setbacks.** The setback must be a minimum of thirty (30) feet from the front building façade to the front property line, although these regulations do not preclude a deeper setback at the discretion of the property owner. Modifications to the required front yard setback are permitted/required under the following conditions:

(a) Where fifty (50) percent or more of the frontage along a street has existing structures that are setback less than thirty (30) feet from the front building façade to the front property line, the average of those setbacks shall be used, and no building shall project beyond the average front yard already established.

(b) Where lots have double frontages (usually on corner lots), the required front yard setback provision shall be provided on both streets. . . .

The power of the Board of Adjustment to vary or modify application of requirements regarding use of land is, as recognized by both parties' briefs, contained in Section 89.090, RSMo (2007) [1]:

1. The board of adjustment shall have the following powers:

(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of sections 89.010 to 89.140 or of any ordinance adopted pursuant to such sections;

(2) To hear and decide all matters referred to it or upon which it is required to pass under such ordinance;

1. Unless otherwise indicated, all subsequent statutory citations are to RSMo 2007.

(3) In passing upon appeals, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done, provided that, in any city with a population of three hundred fifty thousand or more inhabitants which is located in more than one county, the board of adjustment shall not have the power to vary or modify any ordinance relating to the use of land.

■ City has specifically delineated this power of Section 89.090 by enactment of Section 29.10 of chapter 38 of the Municipal Code, City of Jennings Zoning Ordinance, and providing further:

**Area Variances.** An area or non-use variance (hereinafter referred to as an area variance) authorizes a deviation or departure from the literal requirements of the Zoning Ordinance regulations within a given zoning district, especially as the Zoning Ordinance regulations relate to setbacks. In passing upon appeals, the Board of Adjustment is authorized to grant an area variance only upon findings that:

(a) There are practical difficulties or unnecessary hardships associated with the strict application of the Zoning Ordinance, due to exceptional or unique circumstances or conditions such that strict application would deprive the owner of the reasonable use of the property; and

(b) Granting the variance requested would observe the spirit of the Zoning Ordinance and secure public safety and welfare; and

(c) The deviation from strict application of the Zoning Ordinance authorized by the area variance would not constitute a change in the zoning district map, impair an adequate supply of light and air to adjacent property, increase congestion in public streets, increase the danger of fire, materially diminish or impair established property values within the surrounding area, and would not in any other respect impair the public health, safety, comfort, morals and general welfare of the City of Jennings.

If an appeal for an area variance is granted, the Board shall grant the minimum variance necessary to allow the applicant reasonable use of his land.

The board's power and authority must be exercised sparingly and only under exceptional circumstances. *Matthew v. Smith*, 707 S.W.2d 411, 413 (Mo. banc 1986).

■ In reviewing an appeal in a zoning variance case, the Court of Appeals must determine whether the variance involved is a use or nonuse variance. *Ogawa v. City of Des Peres*, 745 S.W.2d 238, 242 (Mo.App. E.D.1987). The type of variance requested will determine what facts the applicant for the variance must establish. *See Matthew*, 707 S.W.2d at 416. A use variance is one permitting a use other than one prescribed by the zoning ordinance in the particular district; it permits a use that the ordinance prohibits. *Id.* at 413. A nonuse variance authorizes deviations from restrictions that relate to a permitted use, rather than limitations on the use itself. *Id.* A nonuse variance consists mostly of variances of bulk restrictions, of area, height, density, setback, side line restrictions, and restrictions covering miscellaneous subjects, including the right to enlarge nonconforming uses or to alter nonconforming structures. *Id.* Because Petitioner's property is located in an area zoned R–1 for single family dwellings, the

variance from the 30–foot setback requirement, or average setback along the street, is not a use variance, but is a nonuse variance.

Missouri follows the New York model in treating the distinction between use and nonuse variances. *Matthew,* 707 S.W.2d at 416. An applicant for a use variance must prove "unnecessary hardship" and an applicant for a nonuse, or area variance, such as Petitioner, must establish, *inter alia,* practical difficulties, which are the existence of conditions *slightly* less rigorous than unnecessary hardships. *Id.* (emphasis theirs). The rationale for this distinction is that an area variance is a relaxation of one or more incidental limitations to a permitted use and does not alter the character of the district as much as a use not permitted by the ordinance. *Id.* In determining whether such practical difficulties exist to justify the grant of a nonuse variance, the following guidelines have been established:

> The phrase "practical difficulties or undue hardships" as contained in the Zoning Code does not refer to conditions personal to the owner of the land in question but rather refers to the conditions especially affecting the lot in question. Further, the practical difficulty or undue hardship relied on as a ground for a variance must be unusual or peculiar to the property involved and must be different from that suffered throughout the zone or neighborhood.

*Ogawa,* 745 S.W.2d at 242–43.

In a determination of "practical difficulties," relevant factors to consider include:

> (1) how substantial the variation is in relation to the requirement, (2) the effect, if the variance is allowed, of the increased population density thus produced on available governmental facilities (fire, water, garbage and the like), (3) whether a substantial change will be produced in the character of the neighborhood or a substantial detriment to adjoining properties created, (4) whether the difficulty can be obviated by some method, feasible for the applicant to pursue, other than a variance, and (5) whether in view of the manner in which the difficulty arose and considering all of the above factors the interests of justice will be served by allowing the variance.

*Slate v. Boone County Bd. of Adjustment,* 810 S.W.2d 361, 364 (Mo.App. W.D.1991), *quoting Wachsberger v. Michalis,* 19 Misc.2d 909, 191 N.Y.S.2d 621, 624 (N.Y.Sup.Ct.1959). In deciding if there are practical difficulties, at the very least, a person seeking a non-use variance must demonstrate that, as a practical matter, the property cannot be used for a permitted use without coming into conflict with the restrictions contained in the ordinances. *Slate,* 810 S.W.2d at 364.

The determination of whether practical difficulties exist is a factual matter that is reversible only for an abuse of discretion. *State ex rel. Charles F. Vatterott Constr. Co., Inc. v. Rauls,* 170 S.W.3d 47, 51 (Mo.App. E.D.2005). A board may consider the hearsay testimony of city staff members received without objection. *State ex rel. Sander v. Bd. of Adjustment of the City of Creve Coeur,* 60 S.W.3d 14, 16 (Mo.App. E.D.2001). "The determination as to the credibility of witnesses is strictly for the administrative tribunal, and 'if the evidence supports either of two contrary conclusions, the administrative determination must prevail.'" *State ex rel. Branum v. Bd. of Zoning Adjustment of the City of Kansas City, Mo.,* 85 S.W.3d 35, 41 (Mo.App. W.D.2002) (citing *State ex rel. Columbia Tower, Inc. v. Boone County,* 829 S.W.2d 534, 537 (Mo.App. W.D.1992)). Further, the burden is on the petitioner to demonstrate to the board that the variance

requests should be granted. *Ogawa,* 745 S.W.2d at 242.

As the party requesting the variance, Petitioner had the burden of proof to show that his variance request from the minimum setback requirement should be granted. Petitioner's burden was to make a showing that: (a) practical difficulties exist, due to exceptional or unique circumstances or conditions such that strict application of the zoning ordinance would deprive him of the reasonable use of the property; (b) the requested variance would observe the spirit of the zoning ordinance and secure public safety and welfare; and (c) the variance would not constitute a change in the zoning district map, impair adequate light and air to adjacent property, increase congestion in public streets, increase the danger of fire, materially diminish or impair established property values within the surrounding area, and would not in any other respect impair the public health, safety, comfort, morals and general welfare of City. If an appeal for an area variance is granted, Board shall grant the minimum variance necessary to allow the applicant reasonable use of his land. City of Jennings, Mo., Zoning Ordinance ch. 38, Section 29.10.

At the hearing, Petitioner's evidence of the "practical difficulties" he faces if required to change his garage plans to conform to the City's zoning regulations consisted of his testimony and the testimony of his counsel. Although Petitioner testified that a firm located a sewer line on his property, he provided Board with no certified evidence of a precise location of the sewer. Petitioner submitted as evidence a general and qualified statement from MSD that MSD would not approve a structure near an existing pipe *if* it will impose an additional load on the sewer line, *unless* the additional load will be directed below the sewer line. MSD's statement indicated that a request for approval of construction would be considered on a case-by-case basis according to each case's engineering drawings. Petitioner presented Board with no evidence that MSD had made any conclusion with regard to the particular sewer line in question.

To refute the existence of practical difficulties, Public Works Director testified that the property in fact could be used for the permitted use without coming into conflict with the setback restrictions if Petitioner first moved or strengthened the existing sewer pipe. Public Works Director stated that Petitioner then could build a garage without need for a variance.[2] We recognize that even if MSD had no jurisdiction over the sewer line in question, it is possible that the location of the private sewer line might necessitate its relocation or reinforcement in order to ensure the integrity of the sewer line prior to the construction of the garage as proposed by Petitioner. Whether such relocation or reinforcement is practical or feasible for Petitioner will depend upon the facts presented to Board. Unfortunately, Petitioner presented no evidence relating to the cost or feasibility of these alternatives to Board. The record before us does not contain any evidence from which we can conclude that the alternatives suggested by City were unreasonable. Reviewing the evidence in the light most favorable to Board's decision, we find that it was reasonable for Board to accept the testimony of City's staff member, Public Works Director, who testified that it was feasible for Petitioner to modify the sewer pipe.

**2.** Whether MSD had any jurisdiction over the sewer line is questionable as the parties acknowledge that the sewer line in question was initially a private sewer line and there is no evidence that the sewer line ever became part of an MSD easement.

Petitioner further asserts the encroachment of the required set-back by structures on neighboring properties supports his claim for the variance in that the variance requested will not produce a substantial change in the character of the neighborhood or create a substantial detriment to adjoining properties. Petitioner presented evidence that a few properties, including one adjoining property had structures that encroached within the required setback. However, no evidence was presented to Board, and consequently, there is no evidence in the record before this Court, that any of these encroachments were the result of Board-granted variances as opposed to structures existing prior to the enactment of zoning regulations by City. In his brief, Petitioner admits, with regard to the neighboring garage located 3 feet from Wedgewood Avenue: "[w]hether this structure was legal at the time of its construction is not established by the record." On the other hand, evidence was introduced that most of the structures located on properties in Petitioner's neighborhood did not encroach upon the setback mandated by City ordinance.

From the evidence before us, we cannot conclude that Board abused its discretion in determining that there was insufficient evidence of any practical difficulty unique to the land that would prevent Petitioner from using the land for a permitted use. Board is not bound to grant a variance that it believes would benefit the Petitioner for the sake of convenience, but would also lead to the detriment of the surrounding existing community by controverting the spirit of the local zoning regulations. Section 89.090.1(3).

■ We further note that Petitioner did not meet his burden and prove that the requested 10–foot variance was the "minimum variance necessary" as City's zoning ordinance requires. City of Jennings, Mo.,

Zoning Ordinance ch. 38, Section 29.10. Petitioner's counsel conceded on more than one occasion during the variance hearing that Petitioner was requesting a 10–foot variance, but would accept a smaller variance of 5 feet. Petitioner's counsel, however, also suggested to Board that if the Board would approve a variance with the minimum amount of 5 feet, a slightly larger variance was not "that much more excessive or that much more of a problem." These statements, combined with a Board member's comment at the hearing that Board did not know the minimum variance necessary for Petitioner's garage, signal to this Court that Petitioner did not meet his burden and identify the "minimum variance necessary." Thus, Board did not abuse its discretion in denying Petitioner's variance.

Petitioner submitted hand drawings of his garage plans, such that he could not positively identify for Board that the "minimum variance necessary" was the 10–foot variance he requested. Petitioner submitted unofficial maps of the neighboring properties with unverified measurements of structures and setbacks. Petitioner provided no evidence as to whether the neighboring structures existed prior to City's zoning ordinance or if the neighboring properties received variances. Based upon a complete review of all of the evidence and viewing the evidence in light most favorable to Board's decision, we conclude that Petitioner did not satisfy his burden and prove that a 10–foot variance was the minimum variance necessary that would observe the spirit of City's zoning ordinance. The record contains substantial and competent evidence to support Board's decision to deny the variance.

### Conclusion

The judgment of the trial court is reversed, and the cause is remanded for

entry of judgment affirming Board's decision.

LAWRENCE E. MOONEY, P.J., and BOOKER T. SHAW, J., Concur.