# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3705

_____

USCOC of Greater Missouri,        *
                                                   *

         Appellant,                 *     Appeal from the United States
                                                   *     District Court for the
         v.                        *     Eastern District of Missouri
                                                   *

City of Ferguson, Missouri,        *
a Missouri political subdivision,    *
                                                     *

         Appellee.                *

_____

Submitted: September 21, 2009
Filed: October 9, 2009

_____

Before MURPHY, JOHN R. GIBSON, and RILEY, Circuit Judges.

_____

MURPHY, Circuit Judge.

USCOC of Greater Missouri commenced this action against the City of Ferguson, alleging that the City violated its rights under the Telecommunications Act (TCA), 47 U.S.C. § 332(c)(7), by failing to act on its applications for zoning variances and a special use permit within a reasonable period of time and by denying them without substantial evidence in a written record. The district court[1] granted the City's motion for summary judgment, and USCOC appeals. We affirm.

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

I.


USCOC is a subsidiary of United States Cellular Corporation and an FCC licensed wireless telecommunications service provider. Part of its business is to locate and develop sites for cell phone towers. In 2006 USCOC acquired a lease on a commercial parking lot in Ferguson, intending to construct a 105 foot wireless communications tower on the lot.


Ferguson's zoning code required USCOC to obtain a special use permit (SUP) from the City Council in order to construct the tower. See Ferguson, Missouri Zoning Code § 23.7 (2008) ["Code"]. The Code also establishes specific setback requirements for communications towers, two of which are particularly relevant here: a tower must be set back from the property boundaries at least one foot for each foot of its height, and no tower may be located within 200 feet of a residential structure. Id. § 23.7(2). Because of the small size of USCOC's lot, there was no way to build the proposed tower without violating these setback provisions. Thus, no SUP would issue unless USCOC obtained setback variances from Ferguson's Board of Adjustment.


After discussing the proposed tower with city officials in late 2006, USCOC formally applied for the SUP on April 9, 2007.[2] City staff reviewed the application and issued a report recommending that it be denied. The staff report emphasized that the tower would violate the Code's setback requirements and that its height and appearance would clash with the surrounding structures, all of which were one story tall. On June 20, 2007, the City's Plan Commission reviewed the application, as required by the Code, and voted unanimously to recommend that the City Council deny the SUP.

---

[2]The parties dispute the date of the application; USCOC maintains that it was filed in November 2006. The actual date of filing is however not material to the issues on appeal.

USCOC nonetheless planned to submit the application for approval at the City Council's July 24, 2007 meeting. On July 19, it applied to the Board of Adjustment for the variances necessary to cure the tower's violations of the setback requirements. Unbeknownst to USCOC, the Board had only three members at that time and thus lacked a quorum. See Code § 25.45. The Board was accordingly incapable of granting USCOC's variances until the mayor appointed a fourth member.[3]

At the City Council meeting, the Council received the staff report on USCOC's proposed tower, and the city manager explained the staff's reasons for recommending denial of the SUP. USCOC's attorney informed the Council that the company was aware of the setback violations and had applied for the necessary variances. He asked the Council to continue the hearing or grant the SUP subject to USCOC's subsequently obtaining the variances. The Council nevertheless proceeded to a decision, voting unanimously to deny the SUP. The decision was effectuated by a written resolution indicating that the reasons for denial included "the obvious violations" of the setback requirements, the lack of the required variances, and the Plan Commission's recommendation.

On August 21, 2007, USCOC commenced this action. It alleged that the Board's failure to act on its variance application amounted to a "constructive denial," and that the denials of the variances and the SUP violated the TCA, the Missouri and United States Constitutions, and Missouri law. One month later USCOC moved for summary judgment on the TCA claims. The district court denied this motion, finding that the Board's delay in acting on the variance application was not unreasonable under the TCA and that the City Council's denial of the SUP was in writing and supported by substantial evidence, in accordance with the statute.

---

[3]Since the Code required at least 15 days public notice before a hearing on a variance application, see Code § 25.33, the Board could not have considered USCOC's application before the City Council meeting in any event.

On November 13, 2007, Ferguson's mayor appointed a fourth member to the Board of Adjustment, thus creating a quorum. The Board then held a hearing on USCOC's variance application on February 4, 2008 and voted unanimously to deny it. USCOC amended its complaint on March 7 and filed a second motion for summary judgment, this time claiming that the Board had violated the TCA by failing to issue a written decision within 30 days of its vote. The Board sent USCOC a written decision a few days later. The decision indicated that the Board had found no "unique characteristics" related to USCOC's property which would amount to the "unnecessary hardship or practical difficulties" required to justify a variance under state law and the City's Code. In addition, it stated that "the proposed variance [would] adversely affect adjacent property owners" and "violate the general spirit and intent of the Zoning Ordinance."

The district court denied USCOC's second motion for summary judgment. It concluded that the Board was not required under the TCA to issue a written decision within 30 days of its vote and that the decision otherwise satisfied the statute's "in writing" requirement. On the City's motion, the court also dismissed all claims not arising under the TCA. The parties then filed motions for summary judgment on the TCA claims. The district court again found that the City Council's denial of the SUP was proper and that the Board's denial of the variances was "in writing." It concluded that denial of the variances was also supported by substantial evidence and thus satisfied the TCA. Accordingly, the court granted the City's motion for summary judgment. USCOC filed a timely notice of appeal.

USCOC raises several issues on appeal. It argues that the district court erred in concluding that (1) the Board of Adjustment did not unreasonably delay in acting on its variance application; (2) the Board was not required to issue a written decision within thirty days of its vote to deny the variances; (3) the Board did not violate the TCA by failing to record a transcript of the variance hearing; and (4) the denials of both the SUP and variances were "supported by substantial evidence" as required by

-4-

the TCA. We review the district court's grant of summary judgment de novo, construing all issues of material fact in the light most favorable to the nonmoving party. Level 3 Commc'ns, L.L.C. v. City of St. Louis, 477 F.3d 528, 533 (8th Cir. 2007).

## II.

USCOC's first argument on appeal is that the Board of Adjustment failed to act on its variance application within a reasonable period of time, as required by the TCA. We have no jurisdiction to decide this issue, as USCOC failed to preserve the claim in its notice of appeal.

Federal Rule of Appellate Procedure 3(c)(1)(B) provides that the notice of appeal must "designate the judgment, order, or part thereof being appealed." Rule 3(c) "is more than a mere technicality," and failure to comply with it "may create a jurisdictional bar to an appeal." ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186, 189 (8th Cir. 1995). We construe notices of appeal liberally, but we only have jurisdiction when the appellant's intent to challenge a particular order or judgment is apparent and the adverse party will suffer no prejudice if review is permitted. Berdella v. Delo, 972 F.2d 204, 207 (8th Cir. 1992).

The proceedings below involved three separate orders on motions for summary judgment. Although the district court's final order granted the City's motion for summary judgment on USCOC's two remaining claims, the notice of appeal specifically states that USCOC appeals from the order "granting Defendant's Motion for Summary Judgment on Count I." Such a specific notice evidences an intent to abandon other claims, not to appeal the court's previous orders. Indeed, we have held that "a notice which manifests an appeal from a specific district court order or decision precludes an appellant from challenging an order or decision that he or she failed to

-5-

identify in the notice." Parkhill v. Minnesota Mut. Life. Ins. Co., 286 F.3d 1051, 1058 (8th Cir. 2002).[4]

We therefore conclude that we have jurisdiction to review only the district court's order granting the City's motion for summary judgment on count I of USCOC's amended complaint. That count alleged that the City's denials of USCOC's SUP and variances were neither in writing nor supported by substantial evidence, as required by 47 U.S.C. § 332(c)(7)(B)(iii). We also may reach arguments addressed in the district court's earlier orders to the extent they relate to this claim. Even construed generously, however, USCOC's claim of unreasonable delay cannot be understood as relating to § 332(c)(7)(B)(iii). Rather, it properly arises under § 332(c)(7)(B)(ii), which requires local governments to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time."[5] Accordingly, we have no jurisdiction to consider the claim for failing timely to act.

We turn, then, to the merits of USCOC's various arguments that the City's denials of its SUP and variances violated 47 U.S.C. § 332(c)(7)(B)(iii). This section of the TCA provides that any local government decision denying a request to construct

_____

[4]Even when the notice of appeal is deficient, jurisdiction may be established by a properly filed appeal information form (required by Local Rule 3B) which indicates the appellant's intent to appeal a particular order. ELCA, 53 F.3d at 189 ("If [the appeal information form] is filed within the thirty days permitted for the notice of appeal, . . . it can adequately supplement or amend the notice of appeal so as to vest this court with jurisdiction to address a particular order."). Since USCOC filed its appeal information form more than thirty days after the notice of appeal, it is insufficient to cure the defect in its notice.

[5]USCOC's claim that the Board's delay amounted to a "functional denial" of its application might be understood as arising under § 332(c)(7)(B)(iii), but this theory is unavailing given the Board's subsequent actual denial of the variances.

a wireless communications facility "shall be in writing and supported by substantial evidence contained in a written record."

USCOC first argues that the Board of Adjustment violated the "in writing" requirement by failing to issue its written decision within thirty days of voting to deny its variance application. It reaches this conclusion by reading the "in writing" requirement together with § 332(c)(7)(B)(v), which gives plaintiffs thirty days to bring suit under the TCA after a local government's "final action" on an application. USCOC contends that "final action" for purposes of the statute of limitations occurs when the local government votes to deny an application and that the requirement for a written decision should be interpreted as requiring one within the limitations period. The district court rejected this argument, concluding that the written decision itself constitutes "final action" under § 332(c)(7)(B)(v) and that the Board therefore faced no statutory deadline.

We have not previously considered what "final action" means for purposes of the TCA. Both the Sixth and Eleventh Circuits have concluded, however, that "final action" does not occur until the local government issues a written decision. See Omnipoint Holdings, Inc. v. City of Southfield, 355 F.3d 601, 607 (6th Cir. 2004); Preferred Sites, LLC v. Troup County, 296 F.3d 1210, 1217 (11th Cir. 2002). Because this reading best accords with the language, structure, and purpose of the statute, we also conclude that "final action" under 47 U.S.C. § 332(c)(7)(B)(v) occurs when a state or local government issues a written decision denying an application to construct a wireless service facility.

The plain language of the TCA indicates that "final action" does not occur until issuance of a written decision. As the Eleventh Circuit noted in considering this question, "[p]utting the decision in writing is the last action the [local government] authority is statutorily required to take; therefore, the issuance of the written decision is logically the 'final action.'" Preferred Sites, 296 F.3d at 1217. We agree that the

-7-

meaning of the phrase in this context is clear. USCOC's interpretation, in contrast, is not supported by the language or structure of the statute. USCOC argues that the TCA defines "final action" by reference to state and local administrative law. Nothing in the statute supports this reading, nor does any language in the statute indicate an intent to impose a thirty day deadline for local governments to issue written decisions. Indeed, a contrary aim is manifested by § 332(c)(7)(B)(ii), which instructs local authorities to act on applications "within a reasonable period of time . . . taking into account the nature and scope of the request." This provision evinces an intent to create a relatively flexible time frame in which local governments must act.[6]

Our interpretation of the "final action" provision is in accordance with the purposes of the statute as well as its language. The central concern of the TCA's "in writing" requirement is to enable effective judicial review of local government action, and we have been guided by that concern in interpreting § 332(c)(7)(B)(iii). See Sprint Spectrum, L.P. v. Platte County, Mo., 578 F.3d 727, 732 (8th Cir. 2009). Because the written decision is the central object of our scrutiny under the TCA, the process of judicial review is best served by delaying the ripening of a TCA claim until the local authority has issued its written decision. See Omnipoint Holdings, 355 F.3d at 607 ("We can imagine no other document that would be easier to work with or more useful or informative to an applicant or to a reviewing court than the [written decision].").[7]

_____

[6]The House Conference Report on the TCA supports this conclusion, stating that "[i]t is not the intent of [§ 332(c)(7)(B)(ii)] to give preferential treatment to the personal wireless service industry in the processing of requests, or to subject their requests to any but the generally applicable time frames for zoning decision." H.R. Conf. Rep. 104-458, at 208 (1996).

[7]USCOC argues that our reading of the statute will allow local governments to prevent ripening of a plaintiff's TCA claim indefinitely by declining to issue a written decision. This does not present a significant concern, because such delay would be remediable under §§ 332(c)(7)(B)(ii) (requiring action "within a reasonable period of

Because we conclude that the Board of Adjustment's "final action" under 47 U.S.C. § 332(c)(7)(B)(v) did not occur until it issued a written decision on USCOC's variance application, it follows that the Board did not violate the "in writing" requirement of § 332(c)(7)(B)(iii) by issuing that decision more than thirty days after voting to deny the variances.

USCOC next argues that the Board of Adjustment violated § 332(c)(7)(B)(iii)'s "written record" requirement by failing to provide a transcript of the proceedings on its variance application. We disagree. The statute requires only "a written record," and establishes no specific requirements as to its nature. Cf. USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment of Des Moines, 465 F.3d 817, 824 (8th Cir. 2006) ("The TCA requires only that the Board's final decision be in writing and supported by substantial evidence *in a written record*.") (emphasis in original). USCOC avers that local law imposed more specific record keeping duties upon the Board, but the TCA does not incorporate these requirements. The written record before us satisfies the modest demands of § 332(c)(7)(B)(iii).

We turn finally to USCOC's challenges to the evidence underlying the City's denial of its SUP and variances. USCOC argues that neither decision was "supported by substantial evidence," as required by § 332(c)(7)(B)(iii). We agree with the district court that both decisions were adequately supported.

The TCA's "substantial evidence" requirement does not impose substantive standards on local governments. Rather, it requires a reviewing court to determine whether the local authority's decision comports with applicable local law. Sprint Spectrum, 578 F.3d at 733. Our review of local government decisions under the TCA is "essentially deferential," id. at *6, and the party seeking to overturn a decision bears

time") and 332(c)(7)(B)(v) (providing cause of action for plaintiffs "adversely affected by . . . failure to act by a State or local government"). See Preferred Sites, 296 F.3d at 1217 n.5.

the burden of proving that it is not supported by substantial evidence, <u>USCOC of Greater Iowa</u>, 465 F.3d at 821. Thus, the City's decisions must be affirmed if they are "supported by some substantial level of evidence (but less than a preponderance) on the record as a whole." <u>Id.</u> at 821 (internal quotation marks omitted). We will not overturn the City's decisions simply because the evidence might reasonably support a different conclusion. <u>Id.</u> at 821–22.

We first consider the evidence supporting the Board of Adjustment's denial of USCOC's variances. Two provisions of local law governed USCOC's application. First, Missouri law empowers city boards of adjustment, "where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of [a zoning ordinance], to vary or modify the application of . . . such ordinance . . . so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done." Mo. Rev. Stat. § 89.090(3) (1998). Section 25.42.1 of Ferguson's zoning code adopts this language verbatim in all relevant respects. In addition, Code § 25.44 provides that "the Board shall, before making any finding in a specific case, first determine that the proposed change will not . . . impair the public health, safety, comfort, morals and welfare of the City of Ferguson."

Missouri case law establishes several factors for local boards to consider in deciding whether "practical difficulties" exist.[8] Those most relevant here are "how

---

[8]"Practical difficulties" and "unnecessary hardship" are separate standards. The former applies to area variances which allow deviation from zoning restrictions on uses permitted by the zoning ordinance. <u>See</u> <u>Baumer v. City of Jennings</u>, 247 S.W.3d 105, 113 (Mo. Ct. App. 2008). In contrast, the latter standard applies to use variances which allow a use of the property otherwise entirely prohibited by the ordinance. <u>Id.</u> Because an area variance is a less dramatic departure from the ordinance, the standard is somewhat more lenient: Practical difficulties "are the existence of conditions *slightly* less rigorous than unnecessary hardships." <u>Id.</u> (emphasis in original). USCOC maintains that the Board applied the wrong standard to its application. We conclude that USCOC's application was properly rejected under either standard.

substantial the variation is in relation to the requirement" and "whether a substantial change will be produced in the character of the neighborhood or a substantial detriment to adjoining properties created."  Baumer v. City of Jennings, 247 S.W.3d 105, 113 (Mo. Ct. App. 2008).  The party seeking the variance bears the burden of demonstrating that practical difficulties exist and that the variance should consequently be granted.  Id. at 113–14.  Finally, "[t]he general rule is that the authority to grant a variance should be exercised sparingly and only under exceptional circumstances."  Matthew v. Smith, 707 S.W.2d 411, 413 (Mo. 1986) (en banc).

The Board of Adjustment denied USCOC's variance application because it concluded that there were "no practical difficulties caused by the physical conditions of the land which prevent the use of the property in accordance with the C-1 zoning regulations."  In addition, the Board's decision stated:

> Because of the proximity of the proposed tower to Airport Road, overhead utility lines servicing the area and adjacent residential properties, and because of the height of the proposed tower and the extent of the variances requested, the proposed variance will adversely affect adjacent property owners or residents and the public health, safety, order, convenience, and general welfare of the community.

The Board failed to point systematically to the evidence underlying its findings, but we may look to the record as a whole in determining whether they were supported by substantial evidence.  See USCOC of Greater Iowa, 465 F.3d at 824 ("We are not precluded from citing record evidence in our review . . . merely because the Board failed to mention that evidence in its [written decision].").  Ultimately, while the Board's decision is not a model of effective legal writing, it is adequate to "permit meaningful judicial review," Sprint Spectrum, 578 F.3d at 732, and we conclude that it is supported by substantial evidence as required by the TCA.

-11-

First, there is no dispute that USCOC sought extensive variances of the setback requirements. For example, while the zoning code required a setback of 105 feet, the proposed tower would be only 23 feet from the eastern property line and 31 feet from the northern line. It would also be 118 feet from the nearest residential structure, while the zoning code required a setback of 200 feet. See Code § 23.7(2). These variations are extreme, and the Board could properly consider their extent in rejecting the application. See Baumer, 247 S.W.3d at 113.

There is also substantial evidence in the record to support the Board's finding that altering the setback requirements would adversely affect adjacent property owners. The City staff report on USCOC's proposal was before the Board when it considered the application, and the report makes clear that the proposed "tower will be 105 feet tall in an area where all of the surrounding structures are only 1 story tall," and "is not compatible with the residential properties to the south." The report concludes that "[d]isguising the tower as a flag pole will not change the fact that it will create a visual problem in the neighborhood." Common sense supports the conclusion that a 105 foot cell phone tower looming over single story buildings would produce "a substantial change . . . in the character of the neighborhood or a substantial detriment to adjoining properties."[9] Id. The Board could also reasonably conclude

_____

[9]USCOC argues that the Board could properly consider only how the variances themselves—not construction of the tower—would affect the neighborhood. In other words, the Board should have presumed the existence of the tower and considered only whether a few feet one way or another would make a significant difference in its impact on the neighborhood. USCOC provides no authority to show that this is the proper analysis under Missouri law. Even assuming USCOC were correct, however, we believe the Board's decision was supported by substantial evidence. The Board could reasonably conclude that a tower requiring extreme setback variances would affect the neighborhood in a manner materially different from a tower that needed no variance. Indeed, the very existence of setback requirements presumes that, in land use regulation, feet and inches are significant. If it were otherwise, the Missouri courts would not consistently hold, as they do, that "the authority to grant a variance should be exercised sparingly and only under exceptional circumstances." Matthew,

from this evidence that granting USCOC's variances would "impair the public health, safety, comfort, . . . and welfare."  Code § 25.44.

USCOC emphasizes that no neighboring property owners opposed its application, but that is beside the point.  USCOC would not have been entitled to variances by the absence of complaints.  To the contrary, it bore the burden of justifying significant departures from the Code.  The Board reasonably concluded that USCOC failed to carry that burden, and its decision was supported by substantial evidence.

Because we conclude that the Board's denial of USCOC's variance application was supported by substantial evidence, we also conclude that the City Council's denial of the SUP was proper.  There is no dispute that without the necessary variances, USCOC's proposed tower would violate Ferguson's Zoning Code.  See Code § 23.7(2).  Failure to obtain the variances is thus fatal to the SUP application.  USCOC argues that because the Board of Adjustment was unable to consider its variance application at the time of the SUP hearing, the Council should have continued the hearing or conditionally granted the SUP.  It has not alleged that the Council had any legal obligation to do so, however.  While one may sympathize with USCOC's frustration at having its SUP denied because it lacked variances which were legally impossible to obtain at the time, such an argument was mooted by the subsequent consideration and denial of its variance application.[10]

_____

707 S.W.2d at 413.  For the Board of Adjustment to grant the variances because they would only move a large structure several dozen feet one way or another would ignore this principle and contravene the Board's duty to see that "the spirit of the [Code] shall be observed."  Code § 25.42.1.

[10]As counsel for USCOC conceded at oral argument, "If they are going to deny [the variances] anyway, it does not make a difference" whether the City Council ruled on the SUP before or after the decision on the variance application.

Moreover, the City Council's decision was not based solely on the lack of variances; it also rested on the Plan Commission's recommendation that the SUP be denied. The Council's reference to this reason in the resolution denying the SUP adequately directs us to the reasons underlying the Commission's recommendation, including the City staff report, which was before the Council and the Commission. Cf. Sprint Spectrum, 578 F.3d at 732 n.2 (finding TCA's "in writing" requirement satisfied where written decision "provide[d] adequate guidance concerning the [zoning authority's] rationale"). The staff report provided substantial evidence to support denial of the SUP under the standards set forth in Code § 23.4.

## III.

We agree with the district court that Ferguson's Board of Adjustment did not violate the Telecommunications Act by failing to issue a written denial of USCOC's variance application within thirty days of its vote or by failing to record a transcript of the proceedings on the application. We also agree that the City's denials of both the SUP and the variances were supported by substantial evidence. Accordingly, we affirm the judgment of the district court.

_____

-14-