

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| ANTIOCH COMMUNITY CHURCH, | ) | **WD79676** |
| | ) | |
| Respondent, | ) | **OPINION FILED:** |
| v. | ) | |
| | ) | **December 13, 2016** |
| THE BOARD OF ZONING ADJUSTMENT OF THE CITY OF KANSAS CITY, MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri
Honorable Janet Lodwick Sutton, Judge**

**Before Division One:   Thomas H. Newton, P.J.,
Cynthia L. Martin, and Edward R. Ardini, Jr., JJ.**

The Kansas City, Missouri, Board of Zoning Adjustment (Board) appeals a Clay County Circuit Court judgment finding that it abused its discretion in failing to grant Antioch Community Church a variance from the city's sign ordinance.  The Church contends that the Board abused its discretion because the evidence showed practical difficulties if the Church were required to remove the digital component of its sign and that the requested variance was insubstantial.[1]  In the alternative, the Church contends

---

[1] As the party aggrieved by an agency decision under Rule 84.05(e), the Church must file the first brief and bears the burden of persuasion before this Court as we review the Board's decision.  *See Versatile Mgmt. Group v. Finke*, 252 S.W.3d 227, 231 (Mo. App. E.D. 2008).

that the Board violated its First Amendment rights by favoring less-protected commercial speech over more-protected non-commercial speech in applying the city's sign ordinance. We reverse the Board's decision and affirm the circuit court's judgment.[2]

The Church is in Kansas City, Missouri, on Antioch Road, a four-lane roadway, between I-35 and Vivion Road. The Church property sits within a sizable single-family residential zone that is bookended by commercial areas zoned B4 (the most intense business district), UR (urban residential), D (downtown), and M (industrial), where digital signs are allowed. Nearly 14,000 vehicles travel this section of Antioch Road each day. The Church has long had a monument sign perpendicular to the road to post messages and information about its activities by means of letters hung from cup hooks. The monument sign, which complied in all respects with the city's Zoning and Development Code, dates to 1956 when a second church building was constructed adjacent to the original building. It consisted of glass display cases surrounded by a brick framework. After receiving a legacy gift, Church members decided to swap the cup hooks for a digital system that would allow more frequent informational updates in a larger font with significantly less effort. Unaware that a Kansas City sign ordinance prohibited digital signs on church property in residential zones, they installed the sign in 2010, without seeking a permit or variance, at a cost in excess of $11,000. The digital component of the sign replaced the display cases that had contained the cup hooks and letters; no changes were made to the brick surround.

---

[2] Judge Gabbert, who was appointed to the Missouri Court of Appeals for the Western District after initially being assigned this case, has taken no part in its consideration.

About a year after the Church installed the digital sign and in response to an anonymous complaint, Kansas City issued a notice of violation to the Church, citing section 88-445-06-A-4 of the Kansas City Zoning and Development Code, which states that a church in a residential zone may have a monument sign, but that sign "may not include any form of digital or electronic display." The Church appealed the citation, and before the appeal was heard, filed an application for variance with the Board at city staff's recommendation. The appeal was placed on hold pending a decision on the variance. The city's Planning & Development Department staff prepared a report, taking no position on the Church's basis for the request, but contending that the Board lacked the authority to grant the variance. The Board conducted a hearing on the variance request in February 2012 and denied it without a written decision. Thereafter, the Church's appeal of the citation was continued, and the city's Planning & Development Department staff issued a new report, again stating that the Board lacked the authority to grant a variance. The Board conducted a hearing on the appeal in March 2012 and denied the appeal without a written decision.

The Church then filed a petition for writ of certiorari against the Board in Clay County Circuit Court, seeking review of the variance and appeal denials. The circuit court issued the writ, and the Board filed a response. The circuit court granted the Church's request to file a supplemental writ petition, and the day after it did so, issued a judgment, ordering the Board to issue the variance.[3] The court dismissed as moot

---

[3] The supplemental petition added the City of Kansas City as a defendant and indicated that Kansas City's sign ordinance had been amended in 2015 to allow schools and churches on lots 15 acres or larger, or 10 acres or larger if located on a major arterial road, to use digital signs. The Church, which is on a lot smaller than 10 acres, urged the court to find that this ordinance unconstitutionally discriminates against church advertising.

both the Church's challenge to the Board's ruling on the citation appeal and the constitutional issue raised in the Church's supplemental writ petition. The Board filed this appeal.

**Legal Analysis**

In the first point, the Church argues that the Board abused its discretion in denying its request for a non-use variance to allow the Church to install and use a digital display on its existing monument sign. According to the Church, the un-contradicted evidence before the Board established that the church faced practical difficulties in conveying its messages to the community without a digital display and "the requested variance was insubstantial, would not change the neighborhood, was the only feasible alternative, and was in the interest of justice."

As noted above, where the circuit court reverses the decision of an administrative agency, we review the agency's decision. *Versatile Mgmt. Group v. Finke*, 252 S.W.3d 227, 232 (Mo. App. E.D. 2008). "We presume that the agency's decision is correct. And, as is the general rule when a judgment is presumed correct, the burden to show otherwise falls on the party challenging the decision." *Id.* Similarly, as to a zoning-variance dispute, "[w]e review the decision of the Board, not the decision of the trial court." *Highlands Homes Ass'n v. Bd. of Adjustment*, 306 S.W.3d 561, 565 (Mo. App. W.D. 2009). An applicant for a non-use variance, which involves a requested deviation from a restriction related to a permitted use, must show that it faces "practical difficulties." *Id.* "[W]hether practical difficulties exist is a factual matter." *Id.* (quoting *Baumer v. City of Jennings*, 247 S.W.3d 105, 113 (Mo. App. E.D. 2008)). And, as such, the matter is consigned to the Board's discretion; we

4

reverse for an abuse of discretion only. *See State ex rel. Branum v. Bd. of Zoning Adjustment*, 85 S.W.3d 35, 39 (Mo. App. W.D. 2002). Where a question of law arises, we exercise our independent judgment. *State ex rel. Columbus Park Cmty. Council v. Bd. of Zoning Adjustment*, 864 S.W.2d 437, 440 (Mo. App. W.D. 1993).

Because the question of the Board's authority to grant a variance under these circumstances has been raised, we address that issue first. The Board argues that it is prohibited under the city's Zoning and Development Code from granting any variance as to the "type" of sign allowed by the code. City code section 88-445-12 specifically addresses sign variances and states, in relevant part, "The Board of Zoning Adjustment may grant variances to the requirements for signs, except as to type and number." Section 88-445-12 defines "sign type" as follows:

> A group or class of signs that are regulated, allowed, or not allowed in this code as a group or class. Sign types include, but are not limited to, pole signs, monument signs, oversized monument signs, outdoor advertising signs, wall signs, projecting signs, roof signs, ornamental tower signs, electronic or digital or motorized signs, banner signs, and temporary signs.

Section 88-810 defines "digital sign" as "[a] sign or component of a sign that uses changing lights to form a message or series of messages that are electronically programmed or modified by electronic processes."

The Board contends that because a component of a sign that is digital is a "digital sign" and a "digital sign" is specifically listed as a "sign type," it lacked the authority to grant the Church a variance to add a digital component to its sign. The Church argues that the Board was asked to grant a variance as to that "requirement" in the code which prohibits churches in residential zones from using a "digital or electronic display" on a monument sign. Thus the "type" of sign was not at issue—the sign was

5

a monument sign before the alteration; it was a monument sign with a digital display after the alteration. We agree.

The code defines a monument sign as "[a] sign placed upon a base that rests upon the ground where the width of the base of the sign is a minimum of 75 percent of the width of the longest part of the sign." § 88-810. The part of the code that prohibits a digital display on a monument sign is section 88-445-06-A-4, which allows a church in a residential zone to have "[o]ne monument sign per street frontage which may not exceed 32 square feet in area or 6 feet in height." This section further states, "One sign per lot may include changeable copy, but the changeable copy feature must use direct human intervention for changes and may not include any form of digital or electronic display." Before the Church altered the sign in 2010, it was a monument sign. After the Church altered the sign, it remained a monument sign by definition, albeit with a digital display. Because the Board may grant variances as to sign "requirements," and the digital-display prohibition applying to churches in residential zones is simply a sign "requirement," the Board had the authority to grant the Church a variance from the prohibition on "any form of digital or electronic display."

As to whether the Board properly exercised its discretion in denying the variance, the Church relied on the following as its practical difficulty necessitating a deviation from the permitted use: (1) previously, messages could be changed in adverse weather only by someone going outside and arranging the letters by hand to spell words; (2) the manual letters were smaller and more difficult for motorists to read; and (3) the Church would have wasted more than $11,000 if it must remove the digital display and would have to spend additional funds to replace it with "an inferior wooden

6

display." The city's Planning & Development Department staff presented no contrary evidence, and took no position on the Church's basis for the requested variance. And in rejecting the requested variance, the Board made no findings to suggest that it rejected the Church's unopposed evidence of practical difficulty.

Under state law, zoning boards are permitted, where practical difficulties or unnecessary hardships arise under an ordinance's "strict letter," to "vary or modify the application of any of the regulations or provisions of such ordinance relating to the construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done. . . ." § 89.090.1(3) RSMo (2000, as supplemented). Kansas City's code sets forth similar parameters, adding that the variance should be "generally consistent with all relevant purposes and intents of this zoning and development code." § 88-565-06-B.

Our case law has summarized the factors considered under a practical-difficulty analysis as follows:

> (1) how substantial the variance is; (2) whether the variance will result in a substantial change to the character of the neighborhood or create a substantial detriment to adjoining properties; (3) whether the difficulty can be obviated by some method, feasible for the applicant to pursue, other than a variance; and (4) whether, in light of the manner in which the difficulty arose and considering all relevant factors, the interests of justice will be served by granting the variance.

*Highlands Homes Ass'n*, 306 S.W.3d at 566.

The Church argues that the variation was not substantial, because unlike *Highlands Homes Ass'n*, which involved a variance to double the size of a cell-phone tower, its change just altered the "insides" of a sign that otherwise remained the same.

7

We agree. In the Church's own words, the new sign, which retained the code-compliant exterior framework, simply allows the church to "greatly increase the number of messages it could share with the community" and makes "it easier (and safer) for passing motorists to read the new larger messages."

Regarding the second factor, the Church points to the commercial zones on each side of the residential zone in which it is located and the four-lane roadway it abuts, as well as the positive reviews given to its new sign by the local neighborhood association, to support its argument that the sign does not effect a substantial change to the neighborhood's character or pose a substantial detriment to neighboring properties.

We find this evidence persuasive. The Church is on a busy roadway nestled in the middle of considerable commercial development. Its sign does not substantially change the character of the neighborhood, and no evidence was introduced to show a substantial detriment to neighboring properties.

As to the feasibility of an alternative method, the Church contends that it lacks a non-sign means of communicating the messages it posts on its signs. We agree that other means of advertising or communication, such as fliers or paid advertisements, would not be as effective as a sign in front of the Church. The Church argues as to the fourth and final factor that the interests of justice would be served by granting the variance. It is unnecessary to address this factor, and this point is granted.

Finally, because we have affirmed the circuit court's judgment ordering the Board to issue the requested variance, we do not address the Church's second point on appeal, which asserted a discriminatory application of the city code.

## Conclusion

The Board abused its discretion in denying Church's variance request. Accordingly, we reverse the Board's decision and affirm the circuit court's judgment.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Presiding Judge

Martin and Ardini, JJ. concur.

9