Laura Denvir Stith, Judge
Antioch Community Church appeals the decision of the Board of Zoning Adjustment of the City of Kansas City, Missouri, (BZA) denying the Church a nonuse zoning variance for a digital display on a sign it erected in front of the church building. This Court agrees the BZA erred in concluding it had no authority to grant the Church's requested variance. Contrary to its conclusion that the addition of digital lettering meant the sign no longer qualified as a monument sign as required under the Kansas City zoning and development code, this Court holds the sign remained a monument sign; it simply became a monument sign with digital lettering. The BZA, therefore, had authority to grant a variance if the other requirements for a variance were met. But this Court affirms because the record supports the BZA's decision that the Church did not show "practical difficulties" in operating without the variance.
I. FACTUAL AND PROCEDURAL BACKGROUND
Antioch Community Church is located in the northern part of Kansas City, Missouri, *32 on Antioch Road. Traffic is heavy on Antioch Road, a major thoroughfare with almost 14,000 vehicles passing by the Church daily. While other parts of Antioch Road are commercially developed, the church building is situated on a one-mile stretch of Antioch Road passing through a residential area zoned for single-family homes. The church building is immediately surrounded by single-family homes in all directions and, when standing on the church lot, one can see only single-family homes. But commercially zoned areas, including stores and gas stations, are located approximately half of a mile to both the north and south of the Church.
More than 60 years ago, the Church placed a brick "monument" sign with a 36" x 42" manual display in front of the church building and perpendicular to Antioch Road. Like similar monument signs in front of churches everywhere, the sign was used to display messages about such matters as the name of the pastor and the time for Sunday services. The sign worked by opening the glass front and forming the message by hanging changeable individual letters on rows of cup hooks behind the glass.
In 2010, using $11,426 from the bequest of a church member, the Church upgraded its monument sign to include a digital display in place of the individual removable hanging letters. The Church says this allowed it to increase the number of messages it could display while simultaneously making the messages easier and safer for motorists to view. This also allowed the church members to change the messages electronically from inside the church building, without the need for someone to go outside, open up the sign window, and replace the changeable lettering by hand. The Church credits the digital display for attracting several new members.
The Church sought neither a permit nor a variance prior to its 2010 installation of the digital lettering on its monument sign. While Kansas City's zoning and development code permits institutions (such as schools and churches) located in residential areas to have monument signs, until 2015 institutions in residential zones could have only "[o]ne monument sign per street frontage which ... may include changeable copy, but the changeable copy feature must use direct human intervention for changes and may not include any form of digital or electronic display." KANSAS CITY , MO. , ZONING AND DEVELOPMENT CODE § 88-445-06-A-4 (2011).[1] Beginning in 2015, an exception was adopted for institutions located on property of more than 10 to 15 acres,[2] but the Church's property was too small to qualify under this provision. KANSAS CITY , MO. , ZONING AND DEVELOPMENT CODE § 88-445-11-B(2) (2015).
Approximately one year after the Church added the digital display to its monument sign, Kansas City issued a citation to the Church for violating section 88-445-06-A-4(a). The Church appealed the citation to the BZA, but before the appeal could be heard, the Church filed an application with the BZA for a variance "to allow [a] digital display on [the] existing monument sign." The Church relied in part on section 88-445-12 of the zoning code, which provides, in relevant part, that the BZA "may grant variances to the requirements for signs, except as to type and number." Id. (emphasis added).
*33 After a public hearing, the BZA rejected the Church's request for a variance because it determined the addition of a digital display would change the "type" of sign from a monument sign to a digital sign in violation of section 88-445-12 of the zoning code. The BZA also said it denied the variance because it found even if the addition of a digital display did not change the sign "type," the Church "failed to establish [the] undue hardship or practical difficulty" necessary for granting a variance.[3]
The BZA had put the Church's appeal of the citation for violating the sign ordinance on hold while the variance request was being considered, as the parties agreed granting the variance would have mooted the citation. Once the variance was denied, the BZA held a hearing on the Church's appeal of the zoning violation citation at which the Church claimed that if residential zoning prohibited it and other churches of its size from using digital signs, then the zoning unconstitutionally deprived the Church of the opportunity to express religious messages to the public. The BZA found against the Church on the citation.
The Church filed a petition for writ of certiorari in the Clay County circuit court as to both the BZA's denial of the variance request and its decision on the appeal of the citation. The petition was later supplemented to include a second count asking the court to find the zoning code's prohibition against digital monument signs unconstitutionally discriminates against churches because it permits digital signs only on property larger than 10 to 15 acres, and most churches are located on smaller lots. The supplemental petition attempted to add the City of Kansas City as a defendant, but before service was made on the city the circuit court ruled in the Church's favor on its claim the BZA erred in denying the variance.
The circuit court found in favor of the Church on two grounds: (1) the addition of digital lettering was not a change in sign type so the BZA had the authority to grant the variance; and (2) the Church adequately established the existence of "practical difficulties" so the denial of the variance was not supported by competent and substantial evidence. Because the circuit court found in favor of the Church on these grounds, it entered judgment for the Church without reaching the issues raised in the appeal of the citation. As Kansas City had not been made a party, and as the court had resolved the case on other grounds, the court also did not reach any issue regarding the constitutional validity of the sign requirement the Church sought to raise in its unserved supplemental petition. The BZA appealed. After decision by the court of appeals, this Court granted transfer. Mo. Const. art. V, § 10 ; Rule 83.02.
II. STANDARD OF REVIEW
An appellate court "reviews the findings and conclusions of the BZA and not the judgment of the trial court." State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City, 24 S.W.3d 681, 684 (Mo. banc 2000) . The scope of this Court's review is governed by article V, section 18 of the Missouri Constitution, which provides judicial review of an agency decision "shall include the determination whether the [decision is] authorized by law, and in cases in which a hearing is required by law, whether *34 the [decision is] supported by competent and substantial evidence upon the whole record." This means the "scope of judicial review of the decisions of the board of adjustment in a zoning proceedings is limited to a determination of whether the ruling is authorized by law and is supported by competent and substantial evidence upon the whole record." Rosedale-Skinker Improvement Ass'n v. Bd. of Adjustment of City of St. Louis, 425 S.W.2d 929, 936 (Mo. banc 1968) ; see also Matthew v. Smith, 707 S.W.2d 411, 418 (Mo. banc 1986).
The question whether the decision is authorized by law is a legal question this Court determines de novo. Teefey, 24 S.W.3d at 684 . Determining whether the decision is supported by competent and substantial evidence "does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal." Mann v. Mann, 239 S.W.2d 543, 544 (Mo. App. 1951) . Rather, "an appellate court must view the evidence and reasonable inferences therefrom in a light most favorable to the decision." Teefey, 24 S.W.3d at 684. The burden is on the party seeking the variance to demonstrate it should be granted. Baumer v. City of Jennings, 247 S.W.3d 105, 113-14 (Mo. App. 2008) ; USCOC of Greater Mo. v. City of Ferguson, Mo., 583 F.3d 1035, 1043 (8th Cir. 2009) (Missouri places the burden of demonstrating a practical difficulty on the party requesting the variance).
To the extent Highlands Homes Association v. Board of Adjustment, 306 S.W.3d 561, 565 (Mo. App. 2009), State ex rel. Branum v. Board of Zoning Adjustment of City of Kansas City, Mo., 85 S.W.3d 35, 39 n.1 (Mo. App. 2002), Hutchens v. St. Louis County, 848 S.W.2d 616, 617 (Mo. App. 1993), and similar cases suggest the "competent and substantial evidence" standard is used only when reviewing use variances, and an abuse of discretion standard is used when reviewing nonuse variances, they are incorrect and should no longer be followed.[4] Missouri's constitution specifically mandates the standard of review for variances is whether the decision is supported by competent and substantial evidence. It does not distinguish between types of variances, and this Court has no authority to depart from that standard. Mo. Const. art. V, § 18 ; Matthew, 707 S.W.2d at 418 n.8.
III. GRANT OF A VARIANCE ALLOWING DIGITAL LETTERING ON A MONUMENT SIGN WAS AUTHORIZED BY LAW
Section 88-810 defines "Sign Type" as a "group or class of signs that are *35 regulated, allowed or not allowed in this code as a group or class." It then lists and defines several possible sign types, such as monument signs, wall signs, digital signs, and electronic signs. Id.
The BZA suggests it had no authority to grant the Church's request for a variance. In support, the BZA argues because digital signs are defined as signs having digital lettering,[5] this means the Church's addition of digital lettering to its monument sign must have changed the sign type from a monument sign to a digital sign. And, the BZA notes, section 88-445-12 prohibits it from granting a variance changing the sign type. The BZA concludes this means it was without authority to grant the Church a variance to add digital lettering to its monument sign.
The Church counters that the type of lettering on a sign is not included in the zoning code's definition of what type of sign is a "monument sign." It is correct. Section 88-810 defines a "monument sign" as a "sign placed upon a base that rests upon the ground where the width of the base of the sign is a minimum of 75 percent of the width of the longest part of the sign." The Church's sign fit within this definition of "monument sign" both before and after the change in the lettering from manual to digital, for the zoning code's definition of "monument sign" does not include any language about what kind of lettering is required on a monument sign. It is a different section of the zoning code-section 88-445-06-A-4(a)-that prohibits "any form of digital or electronic display" on monument signs in residential areas. The digital lettering, not barred by the definition of monument sign, simply makes the Church's sign one that fails to comply with one of the other requirements a monument sign should meet.
The BZA's narrower interpretation of what constitutes a monument sign appears to be premised on the belief a sign can be of only one sign type at a time, which would mean a monument sign, by definition, cannot include a digital display as the zoning code provides that a sign with a digital display is a digital sign. The language of the zoning code does not support the BZA's premise.
This Court interprets ordinances using "the same general rules of construction as are applicable to the statutes of the state." Fleming v. Moore Bros. Realty Co., 363 Mo. 305, 251 S.W.2d 8, 15 (Mo. 1952) . When interpreting a statute, "no portion of [it] is read in isolation, but rather is read in context to the entire statute, harmonizing all provisions." Aquila Foreign Qualifications Corp. v. Dir. of Revenue, 362 S.W.3d 1, 4 (Mo. banc 2012) . This means the definition of monument sign in section 88-810 must be harmonized with other sections of the zoning code.
Looking at the zoning code as a whole, it is evident the sign types set out in the code are inherently overlapping. For example, section 88-445-06-A-4(b) includes "wall signs" among the type of signs allowed in residential areas but then regulates their use of digital lettering. While wall signs with digital lettering may fit within the definition of digital signs, the zoning code does not preclude them from also being wall signs.
Similarly, section 88-445-08-A(3) of the zoning code recognizes monument signs may have digital lettering and remain monument signs. It provides that, in certain non-residential districts, "Electronic, *36 digital, or motorized monument signs are permitted" so long as they comply with certain additional requirements. Section 88-445-08-A(3) thereby expressly permits monument signs to have electronic, digital, or motorized components in non-residential districts. Addition of an electronic, digital, or motorized component, therefore, cannot preclude a sign from being of the monument sign type. See Briggs v. State Farm Fire & Cas. Co., 680 S.W.2d 444, 445 (Mo. App. 1984) ("An adjective modifies a noun to denote a quality of the thing named, or to indicate its quantity or extent.") (emphasis added). To accept the BZA's argument that the addition of a digital component to a monument sign automatically converts the monument sign into solely a digital sign, this Court would have to ignore the language in section 88-445-08-A(3) acknowledging the existence of digital monument signs.
For these reasons, the presence of digital lettering on a monument sign does not prevent the sign from continuing to be of the monument sign type, as the zoning code itself implicitly recognizes in section 88-445-08-A(3) by setting out requirements for digital lettering on monument signs in non-residential areas. While the zoning code provides monument signs located in residential zones cannot have digital lettering, the addition of a digital display to the Church's monument sign did not change its sign type. It remained a monument sign, albeit with an unpermitted digital display. The BZA therefore had the authority to grant the Church's request for a variance if other requirements were met.
IV. THE BZA'S DECISION TO DENY THE VARIANCE WAS SUPPORTED BY COMPETENT AND SUBSTANTIAL EVIDENCE
A. Law Governing Nonuse Variances
Section 89.090.1(3), RSMo 2008, provides boards of adjustment shall have the power to grant variances when:
there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done....
Id. In applying section 89.090, this Court has held the "general rule is that the authority to grant a variance should be exercised sparingly and only under exceptional circumstances." Matthew, 707 S.W.2d at 413. It is "generally held that [the existence of a practical difficulty or] unnecessary hardship is the principal basis on which a variance is granted." Id. at 416 (citations and quotations omitted).
A "use" variance "permits a use which the ordinance prohibits." Id. at 413 . Although prior Missouri cases had recognized nonuse variances, Matthew was the first case to recognize a "use" variance in Missouri. Matthew determined Missouri would follow the New York approach and require an applicant to prove "unnecessary hardship" to obtain a use variance. Id. at 415 . In the absence of prior guidance in Missouri cases as to what criteria to apply when deciding whether to approve a use variance, Matthew looked to outside authority, stating an applicant must show:
(1) relief is necessary because of the unique character of the property rather than for personal considerations; and (2) applying the strict letter of the ordinance would result in unnecessary hardship; and the (3) imposition of such a hardship is not necessary for the preservation of the plan; and (4) granting the *37 variance will result in substantial justice to all.
Id. at 415-16, citing, A. Rathkopf, 3 The Law of Zoning and Planning § 38 (1979); N. Williams, 5 American Planning Law § 129.05 (1985).
In addition, Matthew cited approvingly to three criteria utilized in New York law in determining whether the second factor, unnecessary hardship, exists:
(1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.
707 S.W.2d at 416-17, quoting, Otto v. Steinhilber, 282 N.Y. 71, 24 N.E.2d 851, 853 (N.Y. 1939).
Here, the Church's use of its property as a church is a permitted use, and what it seeks is a variance to permit "deviations from restrictions which relate to a permitted use." Matthew, 707 S.W.2d at 413 . The Church, therefore, seeks a "nonuse" variance rather than a "use" variance. Matthew recognized that nonuse variances may be granted if "practical difficulties" are shown and that, under section 89.090, the "practical difficulties" standard is a "slightly less rigorous" version of the "unnecessary hardship" standard. Id. at 416. Unfortunately, neither Matthew nor other variance cases from this Court set out specific criteria for determining when "practical difficulties" have been shown. As this Court noted in Rosedale-Skinker, this lack of a specific definition stems in part from the fact that determining what constitutes a practical difficulty is inherently fact-specific and so committed to the discretion of the zoning authority:
There is no all-inclusive definition of what constitutes a sufficient showing of practical difficulty and undue hardship to warrant granting a variance; whether such difficulties o[r] hardships exist is a question of fact as to which the Board of Adjustment is accorded a discretion to be exercised within the guidelines of the zoning legislation.
Rosedale-Skinker, 425 S.W.2d at 933 .
Nonetheless, Rosedale-Skinker identified certain guiding principles that apply when determining whether practical difficulties have been shown. First, "the power to grant variances must be exercised sparingly and in keeping with the general purpose of the zoning plan and the public welfare." Id. at 936 ; see also § 89.090 ("that the spirit of the ordinance shall be observed").
Second, as noted earlier, "The scope of judicial review ... is limited to a determination of whether the ruling is authorized by law and is supported by competent and substantial evidence upon the whole record." Id., citing, Mo. Const. art. 5, § 22 (1945). The courts may not substitute their discretion for that of the board. State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030, 1033 (Mo. banc 1930) ; Brown v. Beuc, 384 S.W.2d 845, 850 (Mo. App. 1964).
Third, in the absence of specific additional local zoning requirements, section 89.890 does not require a showing that the need for a nonuse variance is due to topographical limitations or the condition of the land itself, as some prior cases erroneously had stated. Rosedale-Skinker, 425 S.W.2d at 932-33 . Rather, "The topography or physical characteristics of the land itself giving rise to difficulties and undue hardships is one, but not the sole, *38 ground upon which variances in the application of zoning regulations may be granted." Id. at 933-34.[6] But to ensure it is practical difficulties with the zoning that cause the need for a variance, later nonuse cases have followed Matthew 's requirement for use variances that the applicant show "relief is necessary because of the unique character of the property rather than for personal considerations." Matthew, 707 S.W.2d at 415 ; see, e.g., Behrens v. Ebenrech, 784 S.W.2d 827, 829 (Mo. App. 1990) ("Further, the practical difficulty relied on as a ground for a variance must be 'unusual or peculiar to the property involved and must be different from that suffered throughout the zone or neighborhood.' "); accord, Ogawa v. City of Des Peres, 745 S.W.2d 238, 242-43 (Mo. App. 1987).
Slate v. Boone County Board of Adjustment, 810 S.W.2d 361, 364 (Mo. App. 1991), gave further guidance as to what is meant by "practical difficulties." Noting Matthew explicitly followed the "New York model" of variance analysis for use variances, Slate adopted the rule followed in New York that "a non-use variance applicant must show that as a practical matter the property cannot be used for a permitted use without coming into conflict with certain of the ordinance's restrictions." Id. at 364 (emphasis omitted).
As the court of appeals subsequently clarified in Highlands Homes, 306 S.W.3d at 566, this standard does not mean the applicant must show it cannot make any permitted use of the property absent a variance. The latter is the standard for unnecessary hardship, not for practical difficulties. Matthew , 707 S.W.2d at 417 . Rather, it means the applicant seeks to use the property for a specific permitted use but cannot do so without conflicting with the zoning requirement as to which the applicant seeks a variance.[7] See Highlands Homes, 306 S.W.3d at 566. Slate also looked to New York cases for five additional principles that New York applies in considering applications for nonuse variances:
(1) how substantial the variation is in relation to the requirement, (2) the effect, if the variance is allowed, of the increased population density thus produced on available governmental facilities (fire, water, garbage and the like), (3) whether a substantial change will be produced in the character of the neighborhood or a substantial detriment to adjoining properties created, (4) whether the difficulty can be obviated by some *39 method, feasible for the applicant to pursue, other than a variance, and (5) whether in view of the manner in which the difficulty arose and considering all of the above factors the interests of justice will be served by allowing the variance.
810 S.W.2d at 364, quoting, Wachsberger, 191 N.Y.S.2d at 624. While this Court has not had occasion to further address relevant criteria to be evaluated in nonuse variance cases, a myriad court of appeals decisions have followed Slate in considering these criteria.[8] A few cases have shortened the list by eliminating the second criteria, as it is fact-specific to applications affecting zoning density. See, e.g., Highlands Homes, 306 S.W.3d at 566 ; Branum, 85 S.W.3d at 41 .
This Court agrees consideration of these four or five criteria can be helpful in understanding the requirements of section 89.090 for granting a variance, although they are not themselves elements, but rather guidelines, a zoning board should consider in determining whether practical difficulties have been shown. As this Court held in Rosedale-Skinker, ultimately the question of whether practical difficulties have been shown "is a question of fact as to which the Board of Adjustment is accorded a discretion to be exercised within the guidelines of the zoning legislation." 425 S.W.2d at 933 .
Finally, as this Court noted in Matthew, local ordinances, such as Kansas City's zoning code, "may further define the power of the Board of Adjustment to grant a variance, but they may not conflict with the statutory criteria and how courts have interpreted those criteria." 707 S.W.2d at 415 . As relevant here, section 88-565-06 of Kansas City's zoning code further defines the authority of the BZA to grant a variance, and its requirements have not been shown to be inconsistent with section 89.090. The zoning code authorizes the BZA to grant a variance if there is substantial evidence in the record that: (1) a "strict application of one or more standards or requirements of this zoning and development code would result in unnecessary hardships or practical difficulties for the subject property," (2) those practical difficulties "are not generally applicable to other property in the same zoning district," (3) the variance "is generally consistent with all relevant purposes and intents" of the zoning code, and (4) the variance "will result in substantial justice being done." KANSAS CITY , MO. , ZONING AND DEVELOPMENT CODE § 88-565-06 (2011).
Here, the parties do not claim applying the local ordinance changes the analysis as to whether a nonuse variance should be granted. Rather, the focus is on whether the variance requested from the specific signage requirements of the zoning code would meet the various criteria recognized in the cases, and it is to that issue this Court turns.
B. Application of Nonuse Variance Criteria to the Church
The Church seeks a nonuse variance for its monument sign. The Church says it is entitled to the variance under section 89.090 because it has shown it faces practical difficulties in using the property as a church absent a variance allowing it to have a digital monument sign, and the variance can be granted consistent with *40 the "spirit of the ordinance" and in accordance with "public safety and welfare" and "substantial justice." See § 89.090.1(3).
At the BZA hearing, the Church identified three facts it believes constituted practical difficulties to its operation of the church without a digital sign. It also argued these same facts met the other criteria discussed above by showing "relief is necessary because of the unique character of the property rather than for personal considerations" and that justice would be served by granting the variance without substantial deviation from the general zoning plan or a detriment to surrounding properties, citing the criteria set out in Slate, Highlands Homes, and similar cases discussed above.
More specifically, first, the Church argued the lack of a digital sign impairs the church's ability to "meaningfully convey its non-commercial religious messages" because the Church's aging membership found it "extremely difficult" to go outside and manually change the lettering on the old non-digital sign, especially in inclement weather. The Church argued the new digital display also was more useful because it allows the Church to post an increased volume of messages by simply changing the message from inside.
Second, the Church argued the cup letters on the non-digital display were small and difficult for passing motorists to see, and the larger digital letters allow it to more clearly convey its messages and so helps recruit new church members. The Church relatedly suggested the very fact the Church is located on a public street with large traffic flow meant its membership uniquely would benefit from having a digital sign more than most churches, while it agreed a church in a more secluded area would not need a digital sign.
Third, the Church argued it showed economic hardship and "unique factual circumstances" in that the monument sign had existed since 1956, and the Church spent more than $11,000 on the digital display because it knew another church in a different city had no issues upgrading its sign to include a digital display.
While the offered reasons explain why the Church finds a digital display preferable and more convenient, they do not show practical difficulty in carrying out the Church's use of the property as a church.[9] Going outside in inclement weather may be inconvenient, but "[l]egislation granting relief by way of variance to zoning codes is not intended to relieve mere inconvenience." Volkman v. City of Kirkwood, 624 S.W.2d 58, 61 (Mo. App. 1981) . Moreover, the inconvenience does not arise from the bar on monument signs having digital components or from any unique aspect of the property or its use as a church; it is a personal difficulty related to the particular demographics of the current Church members. It can be cured without practical difficulty by having a younger member of the church change the lettering or by hiring someone to change the lettering. A variance is not needed to address this problem. See Cousin's Advert., Inc., 78 S.W.3d at 784 (finding a variance inappropriate when a "proposed sign could be erected in compliance with the [ordinance]
*41 by [simply] locating it in front of the existing building on the ... property").
For these reasons, the Church has failed to show "as a practical matter the property cannot be used for a [specific] permitted use without coming into conflict with certain of the ordinance's restrictions." Slate, 810 S.W.2d at 364 (emphasis omitted). Neither do the problems the Church identified show "relief is necessary because of the unique character of the property rather than for personal considerations." Matthew, 707 S.W.2d at 415-16 .
Similarly, while the ability to exhibit larger bright electronic lettering and to change messages more often and more quickly might improve the Church's ability to convey messages to passing motorists and help with church membership drives, the test for a variance is not whether the variance would be beneficial or allow the Church to expand but whether the Church experiences practical difficulties in operating without the variance. The Church admits that if it were located on a smaller street it would not need the variance to operate as a church. It says it needs the variance only because of its location on a busy thoroughfare. While that location might give the Church a unique opportunity to benefit from the addition of a more visible sign, this does not mean the absence of the digital sign will cause it practical difficulty in operating as a church. See Rauls, 170 S.W.3d at 52 (a board "is not bound to grant a variance which it believes would benefit [Applicant] financially but would also lead to the detriment of the surrounding existing communities"). The Church has existed as a church at this same location sign since 1853 without a sign with digital lettering and has failed to show it cannot continue to do so absent this new, potentially useful modern-day tool.
Finally, while the Church's reliance on the situation of another church in a different city may explain why it spent the $11,000 bequest on the digital upgrade without requesting a variance, these circumstances cannot be said to be unusual or peculiar to the property involved. Neither can the fact that this money would effectively be wasted if a variance is not granted, itself, justify the variance.
However understandable, this failure and the resulting cost are the epitome of a problem that is personal in nature rather than resulting from the unique nature of the property involved.[10] The unfortunate waste of resources was caused by the Church's expenditure without checking on the zoning requirements, not due to the requirements themselves. The fact it would be costly to remove the digital sign and reinstall a manual one does not show "as a *42 practical matter the property cannot be used for a permitted use without coming into conflict with certain of the ordinance's restrictions." Slate, 810 S.W.2d at 364 .
The Church has not met its burden of establishing the existence of a practical difficulty absent the grant of a variance for its digital sign.
V. FIRST AMENDMENT CLAIM
The Church alternatively asks this Court to hold the portion of Kansas City's zoning code prohibiting digital monument signs in residential zones violates the First Amendment by favoring commercial speech over non-commercial speech.[11] In support, the Church's brief on appeal notes most churches are located in residential areas and argues this means ordinances imposing limitations on signs in residential areas but not in commercial areas inherently discriminate against churches because of their location in residential areas. The Church describes this as "content-based" discrimination because, it says, the impact is felt by churches, whose signs would have a different content than would the signs put up by businesses in commercial areas, and argues this means the ordinances barring digital signs must be subjected to strict scrutiny. It asks that this Court hold the zoning ordinance prohibiting digital signs unconstitutional. There are multiple problems with the Church's First Amendment argument.
Assuming for present purposes the Church were correct that an ordinance imposing additional restrictions on signs in residential areas could be considered content-based and discriminatory because churches tend to be located in residential areas,[12] the Church did not preserve this claim. It was not included in its initial petition, which named the BZA as the only defendant. And while the circuit court permitted the Church to file a "supplemental petition" in which the Church named the city of Kansas City as a defendant and raised for the first time a claim that Kansas City's zoning ordinance violated the First Amendment, that supplemental petition was not served before the case was resolved, and Kansas City, therefore, has never been a party to this action, nor has it had an opportunity to file an answer. Yet the constitutional claim the Church makes-that Kansas City violated the First Amendment in enacting the portion of its zoning code disallowing digital monument signs-is a claim directed at Kansas City. The parties acknowledge the BZA did not adopt the zoning code and has no authority to adopt or modify ordinances, so *43 the circuit court could not grant relief in Kansas City's absence.
Aware of these problems in granting it relief on appeal, the Church alternatively requests if it loses on its other claims, that this Court remand for a determination of the constitutional issue raised in its supplemental petition, and presumably for joinder of Kansas City as a party. This Court declines to do so. A constitutional claim must be raised in the first instance and cannot be changed on appeal. State v. Kenley, 952 S.W.2d 250, 260 (Mo. banc 1997) ; State v. Parker, 886 S.W.2d 908, 925 (Mo. banc 1994) ; State v. Flynn, 519 S.W.2d 10, 12 (Mo. 1975) . The First Amendment claim the Church now raises is not the claim it attempted to raise below in its supplemental petition. There, the Church argued the zoning code allows churches located on large lots of more than 10 or 15 acres to have digital signs even when located in residential areas, but not churches like it located on smaller lots. It argues because most churches are located on smaller lots, the zoning code discriminates against religious messages.
The Church's claim on appeal does not cite to or make any argument about this alleged new ordinance, however. Instead, the Church essentially now argues the zoning code's prohibition against digital signs in residential areas has a disparate impact on churches because the zoning code does not allow churches to obtain variances allowing them to have a digital display. But this Court has found the Church is not barred from obtaining a variance if it meets the requirements for a variance. The Church simply failed to meet those requirements. The Church does not and cannot argue the ordinance was unconstitutional when the reason for denial of the variance was its own failure of proof.
VI. CONCLUSION
For these reasons, the BZA's decision to deny the Church's variance request is affirmed.
All concur.

All subsequent references are to Kansas City , Mo. , Zoning and Development Code (2011) unless otherwise noted.

The 10-acre limit applies to institutions located on arterial roads, while the 15-acre limitation applies to institutions located on other residentially zoned property.

The transcript of the hearing shows the BZA denied the variance on the motion of a board member who stated, "I ... feel that [the Church] failed to establish undue hardship or practical difficulty as those terms are defined in law and, furthermore, do not believe that the ordinance permits [the BZA] to grant this request, and I move that the application be denied on both of those grounds." The BZA unanimously voted in favor of the motion and denied the variance request without further written explanation.

It is worthwhile to note the cited source in Highlands Homes , Branum , and Hutchens for use of an abuse of discretion standard is this Court's decision in Rosedale-Skinker, 425 S.W.2d at 933 . But Rosedale-Skinker does not so hold. This Court merely noted, correctly, a zoning board has discretion in determining whether the facts support the grant of a variance. Id. When setting out a court's standard of review of a zoning board's discretionary decision, however, Rosedale-Skinker correctly and clearly stated the appellate court's role was to determine whether the board's decision exercising discretion was "supported by competent and substantial evidence." Id. at 936.
It may seem somewhat semantically awkward to apply the "competent and substantial evidence" standard when the issue is, as in this case, whether the board properly found the applicant did not present sufficient evidence to support the grant of a variance. Indeed, this may be what led courts to apply the more familiar abuse of discretion standard. But the "competent and substantial evidence" standard is what is required to be applied. And it is met when the record supports the board's determination the applicant failed to present evidence showing practical difficulties or the other requirements for a variance.

Section 88-810 separately defines a digital sign as a "sign or component of a sign that uses changing lights to form a message or series of messages that are electronically programmed or modified by electronic processes."

Rosedale-Skinker upheld grant of a variance when Southwestern Bell had shown, as a practical matter, it could not conduct its telephone line business as needed by the public desire for telephone connections without a height variance of 10 feet, as horizontal connections would disrupt phone service and put a terrible burden on the public. 425 S.W.2d at 936-37. This Court said the unique difficulty arose not out of topography but due to the "existing building and hence the situation in which Bell found itself was unique and peculiar in that this special sort of building," which was developed to be used as a telephone building but "was of no use to the applicant unless it had the authority for 10 feet more." Id. at 937. Brown, 384 S.W.2d 845, which had erroneously required a topographic or related difficulty, was overruled in this regard in Rosedale-Skinker, although Matthew did reaffirm that Brown properly set out the general standards for nonuse variances in other regards. Matthew, 707 S.W.2d at 416 n.6 .

And, indeed, this is exactly what the case relied on by Slate held. See Wachsberger v. Michalis, 19 Misc.2d 909, 191 N.Y.S.2d 621, 624 (Sup. Ct. 1959). In effect, this is a restatement of this Court's position in Rosedale-Skinker that Southwestern Bell met its burden by showing that, without the variance, it could not effectively use the building as a telephone building, which was a permitted use. 425 S.W.2d at 937.

See, e.g., Brown v. City of Maplewood, 354 S.W.3d 664 (Mo. App. 2011) ; Baumer, 247 S.W.3d 105 ; Verna Props., L.L.C. v. Bd. of Adjustment of City of Maryland Heights, 188 S.W.3d 50 (Mo. App. 2006) ; State ex rel. Charles F. Vatterott Const. Co. v. Rauls, 170 S.W.3d 47 (Mo. App. 2005) ; Cousin's Advert., Inc. v. Bd. of Zoning Adjustment of Kansas City, 78 S.W.3d 774 (Mo. App. 2002) ; Karelitz v. Soraghan, 851 S.W.2d 85 (Mo. App. 1993) ; Hutchens, 848 S.W.2d 616.

While Antioch notes the BZA did not put on any evidence contradicting its claims that the zoning change would benefit it, the BZA did not have any burden to do so. It was up to Antioch to present competent and substantial evidence supporting a variance, and up to the BZA to determine, in its discretion, whether that evidence supported a variance. See supra § II ; cf. Mo. Church of Scientology v. State Tax Comm'n, 560 S.W.2d 837, 843 (Mo. banc 1977) (finding an "administrative agency may base its decision solely on a finding of lack of credible testimony, though such testimony is uncontradicted or unimpeached").

The Court disagrees with those court of appeals cases suggesting, when the cost of removing an improvement is asserted as a reason for a nonuse variance, the applicant must show "economic hardship" to obtain a variance by showing "that the land in question cannot yield a reasonable return if the variance is not granted." Branum, 85 S.W.3d at 41, quoted with approval in Highlands Homes, 306 S.W.3d at 567-68. As authority for this proposition, Branum cited State ex rel. Holly Investment Co. v. Board of Zoning Adjustment of Kansas City, 771 S.W.2d 949, 951-52 (Mo. App. 1989) , which in turn cited this Court's decision in Matthew.
But the cited point Matthew was discussing was whether "unnecessary hardship" had been shown as is required for use variances. While it suggested a component of unnecessary hardship must or should be economic hardship, it nowhere suggested that, to obtain a nonuse variance, the applicant must show "economic hardship" or that the property could not yield a reasonable return without the variance. 707 S.W.2d at 416-17. That is the antithesis of the standards, which require only that the applicant show it is seeking to make a permitted use of the property but is unable to do so without practical difficulty.

This Court rejects the BZA's argument that the Church waived its constitutional argument by failing to cross-appeal the circuit court's dismissal of Count II as moot. The Church received all the relief it needed when the circuit court ordered the BZA to grant it a variance. It was not aggrieved by the judgment, therefore, and had no standing to file a cross-appeal. See Kennedy v. Dixon, 439 S.W.2d 173, 180 (Mo. banc 1969) ("A respondent on appeal may attack erron[e]ous rulings of the trial court in order to sustain a judgment in his favor" without filing a cross-appeal.).

It is worthy of note that the cases the Church cites do not suggest signs regulating residential areas are inherently content-based. To the contrary, they state that political or church signs within a residential area, and similar signs within a commercial area, must be treated equally without regard to their content. See, e.g., Reed v. Town of Gilbert, Ariz., --- U.S. ----, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015) ; Whitton v. City of Gladstone, 54 F.3d 1400 (8th Cir. 1995) . None of the cited cases state churches in residentially zoned areas must be treated like commercial entities in commercially zoned areas. Indeed, one might argue such disparate treatment of churches based on their religious nature would itself be an unconstitutional content-based distinction between entities based on the nature of their message.